**Case No. 23-55015**

---

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT

---

DANNY LOPEZ, individually, and on behalf of all other aggrieved
employees

*Plaintiff-Appellee*,

v.

AIRCRAFT SERVICE INTERNATIONAL, INC., a corporation and
MENZIES AVIATION (USA), INC., a corporation

*Defendants-Appellants*.

On Appeal from the United States District Court
for the Central District of California
No. 2:21-cv-07108-DMG-E
Hon. Dolly M. Gee

---

## APPELLANTS' OPENING BRIEF

---

Christopher Ward (SBN 238777)
**FOLEY & LARDNER LLP**
555 S. Flower Street, Suite 3300
Los Angeles, CA 90071-2418
Telephone: (213) 972-4500
E-mail: cward@foley.com

Kevin Jackson (SBN 278169)
**FOLEY & LARDNER LLP**
11988 El Camino Real, Suite 400
San Diego, CA 92130-2594
Telephone: (858) 847-6700
E-mail: kjackson@foley.com

*Attorneys for Defendants-Appellants*
Aircraft Service International, Inc. and Menzies Aviation (USA), Inc.

## <u>CORPORATE DISCLOSURE STATEMENT</u>

Pursuant to Fed. R. App. P. 26.1., Defendants-Appellants Aircraft Service International, Inc. and Menzies Aviation (USA), Inc. (hereinafter collectively "Menzies") are wholly owned by Menzies Aviation, Inc., which is itself a subsidiary of John Menzies Limited, a private corporation. There are no publicly-held corporations of companies owning 10% or more of any parent or subsidiary entities of Menzies.

Date: April 10, 2023

**FOLEY & LARDNER LLP**

*/s/ Christopher Ward*
Christopher Ward
Kevin P. Jackson

*Attorneys for Defendants-Appellants*
Aircraft Service International, Inc. and
Menzies Aviation (USA), Inc.

4877-1995-6569.3

## <u>TABLE OF CONTENTS</u>

**Page**

CORPORATE DISCLOSURE STATEMENT ..................................................... i

TABLE OF AUTHORITIES ................................................................. iv

INTRODUCTION ........................................................................... 1

JURISDICTIONAL STATEMENT ............................................................. 3

    I.    The District Court's Subject Matter Jurisdiction ................................. 3

    II.   This Court's Subject Matter Jurisdiction ....................................... 5

    III.  Relevant Dates Governing This Appeal ......................................... 5

ISSUES PRESENTED ....................................................................... 7

STATUTORY PROVISIONS INVOLVED ...................................................... 9

STATEMENT OF THE CASE ............................................................... 11

    I.    Relevant Factual Summary ..................................................... 11

    II.   Relevant Procedural Summary .................................................. 12

SUMMARY OF THE ARGUMENT ........................................................... 16

STANDARD OF REVIEW ................................................................. 19

ARGUMENT ............................................................................. 20

    I.    The District Court Had A Duty To Interpret The Section 1 Exception Narrowly Pursuant To The FAA's Liberal Policy Favoring Arbitration ................................................................... 20

    II.   *Saxon* Creates A Clear Roadmap For Identifying Transportation Workers Under The FAA Tightly Focused On Hands-On Contact With Goods And Direct Participation Moving Them Across State Lines ......................................................................... 22

ii

A. The Actual Work Performed By The Employee – Not The Employer's Industry Or The Worker's Environment – Controls ...................................................................................23

B. For The Section 1 Exception To Apply, The Worker At Issue Must Have Hands-On Contact With "Goods" Or "Cargo" *And* Direct Involvement In Their Interstate Movement ...................24

III. The District Court Did Not Follow *Saxon*'s Framework Nor Apply Its Fundamental Principles, Instead Inventing An Erroneous "Proximity To Goods And Transportation" Analysis That This Court Must Correct ...................................................................................27

A. The Class Of Workers At Issue Here Is Fuelers With Job Responsibilities Limited To Hands-On Contact With Fuel ......27

A. The District Court Conceded Fuel Is Not "Cargo" Or "Goods" But Failed To See The Dispositive Nature Of That Distinction ...................................................................................28

B. Fuel Is An Instrumentality Of Transportation Not A Good, Such That Fuelers Cannot Be Transportation Workers Under *Saxon* ...........................................................................................30

C. Fuelers Lack The Requisite Direct Involvement In Moving Goods Across State Lines To Qualify As Transportation Workers ...................................................................................32

CONCLUSION ...........................................................................................34

STATEMENT OF RELATED CASES

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF SERVICE

iii

4877-1995-6569.3

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Allied-Bruce Terminix Cos. v. Dobson,*
    513 U.S. 265 (1995)...................................................................... 20, 21

*Allis-Chalmers Corp. v. Lueck*,
    471 U.S. 202 (1985).............................................................................4

*Ashbey v. Archstone Prop. Mgmt., Inc.*,
    785 F.3d 1320 (9th Cir. 2015) ...........................................................19

*AT&T Mobility, LLC v. Concepcion*,
    563 U.S. 333 (2011)..................................................................... 16, 20

*Bissonnette v. LePage Bakeries Park St., LLC,*
    49 F.4th 655 (2d Cir. 2022) ....................................................... 23, 32, 33

*Bushley v. Credit Suisse First Bos.*,
    360 F.3d 1149 (9th Cir. 2004) ...........................................................19

*Capriole v. Uber Techs., Inc.*,
    7 F.4th 854 (9th Cir. 2021) ................................................................24

*Circuit City Stores, Inc. v. Adams,*
    532 U.S. 105 (2001)........................................... 16, 20, 21, 24, 27, 29

*Cramer v. Consol. Freightways, Inc.*,
    255 F.3d 683 (9th Cir. 2001) ...............................................................4

*Fed. Trade Comm'n v. Qualcomm Inc.*,
    969 F.3d 974 (9th Cir. 2020) .............................................................19

*Firestone v. So. Cal. Gas Co.*,
    219 F.3d 1063 (9th Cir. 2000) .............................................................3

*Gattuso v. Harte-Hanks Shoppers, Inc.*,
    42 Cal. 4th 554 (2007) ........................................................................3

iv

*Green Tree Fin. Corp. v. Randolph*,
   531 U.S. 79 (2000) ..............................................................................20

*Hansen v. LMB Mortgage Services, Inc.*,
   1 F.4th 667 (9th Cir. 2021) ..................................................................5

*Hawaiian Airlines, Inc. v. Norris*,
   512 U.S. 246 (1994) ..............................................................................4

*Holley-Gallegly v. TA Operating, LLC*,
   No. EDCV 22-593, 2022 WL 9959778 (C.D. Cal. 2022) .......... 25, 26, 29, 31, 33

*Immediato v. Postmates, Inc.*,
   54 F.4th 67 (1st Cir. 2022) ........................................... 25, 29, 31, 33

*Knutson v. Sirius XM Radio Inc.*,
   771 F.3d 559 (9th Cir. 2014) ..............................................................19

*Kobold v. Good Samaritan Reg'l Med. Ctr.*,
   832 F.3d 1024 (9th Cir. 2016) ............................................................4

*Landis v. Wash. State Major League Baseball Stadium Pub. Facilities Dist.*,
   11 F.4th 1101 (9th Cir. 2021) ............................................................19

*Lopez v. Cintas Corporation*,
   47 F.4th 428 (5th Cir. 2022) ............................................. 25, 29, 33

*Matson v. United Parcel Serv., Inc.*,
   840 F.3d 1126 (9th Cir. 2016) ............................................................4

*McCray v. Marriott Hotel Services, Inc.*,
   902 F.3d 1005, fn. 2 (2018) ................................................................4

*Menzies Aviation, Inc.*,
   47 NMB 10 (2019) ..............................................................................3

*Moore-Thomas v. Alaska Airlines, Inc.*,
   553 F.3d 1241 (9th Cir. 2009) ............................................................4

*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*,
   460 U.S. 1 (1983) ................................................................................19

v

*Nair v. Medline Indus., Inc.*,
  No. EDCA 22-331, 2023 WL 2636464 (E.D. Cal. 2023) ...................... 24, 26, 33

*O'Connor v. Uber Techs., Inc.*,
  904 F.3d 1087 (9th Cir. 2018) ...........................................................19

*Perry v. Thomas*,
  482 U.S. 483 (1987) ..........................................................................20

*Rizvanovic v. United Parcel Serv., Inc.*,
  No. EDCA 21-1278, 2023 WL 346800 (E.D. Cal. 2023) ........................... 26, 33

*Southwest Airlines Co. v. Saxon*,
  No. 21-309, 596 U.S. ___ (2022)..................... 1, 7, 16, 17, 22, 23, 24, 25, 28, 32

*Steelworkers v. Rawson,*
  495 U.S. 362 (1990) ............................................................................4

*Suzuki Motor Corp. v. Consumers Union of U.S., Inc.*,
  330 F.3d 1110 (9th Cir. 2003) ...........................................................19

*Textile Workers v. Lincoln Mills*,
  353 U.S. 448 (1957) ............................................................................4

*Valdez v. Shamrock Foods Co.*,
  No. CDCA 22-1719, 2023 WL 2624438 (C.D. Cal. 2023) ......................... 26, 33

*Walling v. Jacksonville Paper Co.*,
  317 U.S. 564 (1943) ..........................................................................29

*Whitaker v. Enbridge (U.S.) Inc.*,
  __F.Supp.3d __, 2022 WL 17405833 (S.D. Tex. 2022).................. 25, 26, 29, 33

*Wirtz v. B. B. Saxon Co.*,
  365 F.2d 457 (5th Cir. 1966) ..............................................................28

**Statutes**

9 U.S.C. § 1 ................................................... 9, 16, 18, 21, 22, 23, 24, 25

9 U.S.C. § 2 ........................................................................ 9, 20, 21, 25

9 U.S.C. § 16(a)(1)(B) ...............................................................5

4877-1995-6569.3

9 U.S.C. § 1291 ....................................................................................5

28 U.S.C. § 1291 ..................................................................................5

28 U.S.C. § 1332 ..................................................................................3

28 U.S.C. § 1441 ..................................................................................3

28 U.S.C. § 1446 ..................................................................................3

45 U.S.C. § 151 ....................................................................................3

**Regulations**

29 CFR § 776.1 ..................................................................................29

**Rules**

FRAP 4(a) ............................................................................................6

FRAP 28(a)(4)(C) ................................................................................5

## **INTRODUCTION**

When it issued its opinion last term in *Southwest Airlines Co. v. Saxon*, No. 21-309, 596 U.S. ___, 142 S. Ct. 1783, 213 L. Ed. 2d 27 (2022) analyzing the Federal Arbitration Act's Section 1 exemption for transportation workers, the Supreme Court emphasized two fundamental and practical concepts. First, to qualify as an exempted transportation worker, the individual's specific job duties must involve hands-on contact with "goods" or "cargo." Second, within that sphere of workers, only those directly involved in moving the goods or cargo across state lines fall within the narrow exemption. This surgical focus on the actual work performed by the actual employees involved make plain that the employee's <u>working environment plays no role in the analysis</u>.

Jet fuel is not "cargo" and it is not a "good." Workers do not pump it into an aircraft's fuel tanks for the purpose of transporting *the fuel* across state lines – rather, its purpose is to *enable the aircraft and its contents* to cross state lines. In other words, fuel is an <u>instrumentality</u> of the process – not the reason for the transportation itself. The District Court all but explicitly recognized this fact when it conceded "an employee who adds fuel to cargo planes is not … moving goods." And that recognition should have compelled the District Court to reject Plaintiff-Appellee Danny Lopez's argument the he qualified as a "transportation worker"

under the FAA and could avoid his contractual arbitration to bring his California Labor Code claims only in binding individual arbitration.

Instead, the District Court resisted the Supreme Court's clear instruction to focus on the actual work performed by the employees at issue. It fashioned an impermissible "physical and temporal proximity to the interstate movement of goods" test – in other words, it focused on the employee's working environment, not the employee's work – to avoid sending this matter to arbitration. In so doing, the District Court acted at odds both with *Saxon* and the cases that have properly followed its guidance and found that work related to the instrumentalities of interstate transportation is not the same thing as direct involvement in transporting goods or cargo across state lines. This Court must not allow such an aberration from *Saxon* to stand, and should send this case to arbitration where it belongs.

2

# JURISDICTIONAL STATEMENT

## I. The District Court's Subject Matter Jurisdiction

The United States District Court for the Central District of California has jurisdiction over this case pursuant to 28 U.S.C. §§ 1332, 1441 and 1446, as well as the provisions of the Railway Labor Act ("RLA"), 45 U.S.C. § 151 *et seq*. The terms and conditions of Plaintiff-Appellee Danny Lopez's employment with Menzies were covered by a collective bargaining agreement that contains provisions regarding payment of wages and overtime, meal and rest periods, and reimbursement of business expenses. (ER 73-75, 127-148). Lopez's various allegations of improper pay and failure to reimburse business expenses are in actuality allegations of failure to abide by the terms of the CBA and are accordingly preempted by the Labor Management Relations Act ("LMRA"). *See Firestone v. So. Cal. Gas Co.*, 219 F.3d 1063, 1068 (9th Cir. 2000) (where employees have opted out of California's overtime provisions through a collective bargaining agreement, a claim for unpaid overtime is preempted by the LMRA); *Gattuso v. Harte-Hanks Shoppers, Inc.*, 42 Cal. 4th 554, 569-70 (2007) (reimbursement of employee-incurred expenses a proper subject for collective bargaining). Menzies is also an employer covered by the RLA, *see, e.g., Menzies Aviation, Inc.*, 47 NMB 10, 10 (2019), which creates "a comprehensive framework for resolving labor disputes" in the rail and airline industries with a preemptive

force virtually identical to that of the LMRA. *Hawaiian Airlines, Inc. v. Norris*, 512 U.S. 246, 252 (1994) (preemption standard under Section 301 of the LMRA is also appropriate for addressing questions of RLA preemption); *see also McCray v. Marriott Hotel Services, Inc.*, 902 F.3d 1005, 1011, fn. 2 (2018). The Supreme Court has directed that federal law should govern actions concerning the interpretation and enforcement of collective bargaining agreements. *See Steelworkers v. Rawson,* 495 U.S. 362, 368 (1990); *Textile Workers v. Lincoln Mills*, 353 U.S. 448 (1957). The RLA also preempts state law claims that are based upon, or require interpretation of, a collective bargaining agreement. *Allis-Chalmers Corp. v. Lueck*, 471 U.S. 202, 220 (1985); *Cramer v. Consol. Freightways, Inc.*, 255 F.3d 683, 693 (9th Cir. 2001) (en banc); *Matson v. United Parcel Serv., Inc.*, 840 F.3d 1126, 1132-33 (9th Cir. 2016); *Kobold v. Good Samaritan Reg'l Med. Ctr.*, 832 F.3d 1024, 1032-33 (9th Cir. 2016). Furthermore, because the RLA preempts state law claims that allege a violation of or require interpretation of a collective bargaining agreement, a District Court has federal question original jurisdiction over such claims and state law actions may be removed to federal court. *See, e.g.*, *Moore-Thomas v. Alaska Airlines, Inc.*, 553 F.3d 1241, 1243-1244 (9th Cir. 2009).

Menzies removed this matter from the Superior Court of the State of California, County of Los Angeles, on September 2, 2021 to the United States

4

District Court for the Central District of California in response to Lopez's

Complaint filed on July 21, 2021. (ER 71).

## II.    This Court's Subject Matter Jurisdiction

The United States Court of Appeals for the Ninth Circuit has subject matter

jurisdiction over this appeal filed by Menzies on January 9, 2023 pursuant to 28

U.S.C. § 1291. (ER 164-178). Section 1291 authorizes the taking of an appeal

from any final decisional of the district courts of the United States in the Circuit.

On July 14, 2022, Menzies filed a Motion to Compel Arbitration pursuant to the

Federal Arbitration Act ("FAA") (the "Motion"), which the District Court denied

in a minute order entered on December 13, 2022. (ER 165, 178). A "district

court's denial of a motion to compel arbitration" is a final order appealable under

the FAA, 9 U.S.C. § 16(a)(1)(B). *See Hansen v. LMB Mortgage Services, Inc.*, 1

F.4th 667, 671 (9th Cir. 2021). Pursuant to 9 U.S.C. § 1291, the District Court's

order on the Motion is properly appealable.

## III.    Relevant Dates Governing This Appeal

Pursuant to Fed. R. App. P. 28(a)(4)(C) and Circuit Rule 28-2-2(c), Menzies

states the following information:

(i)     Date of entry of judgment or order appealed from: December 13, 2022

(ER 165, 178).

(ii)     Date of filing Menzies' Notice of Appeal: January 9, 2023 (ER 164-178).

(iii)     Rule under which Menzies' appeal is timely: Fed. R. App. 4(a), which requires a notice of appeal be filed within 30 days after the entry of judgment or order appealed from.

6

## ISSUES PRESENTED

A.     Whether the United States Supreme Court's analysis of Section 1 of the FAA in *Southwest Airlines Co. v. Saxon*, No. 21-309, 596 U.S. ___, 142 S. Ct. 1783, 213 L. Ed. 2d 27 (2022), should apply to Lopez's employment and exempt him from compliance with the mandatory arbitration agreement he executed in connection with his employment when Lopez had neither involvement with "goods" or "cargo" nor directly participated in their interstate transportation?

B.     Whether fuel loaded onto an aircraft, not for the purpose of transporting the fuel itself from one destination to another but rather as an instrumentality in the movement of the aircraft from one destination to another, qualifies as "goods" or "cargo" within the meaning of *Saxon*'s analysis of the Section 1 exemption to the FAA?

C.     Whether Lopez is a "class of worker … engaged in foreign or interstate commerce" within the meaning of the Section 1 exemption to the FAA as interpreted and applied by *Saxon* when he neither had hands-on involvement with goods or cargo nor had direct involvement in the loading or unloading of goods or cargo into or off of an interstate transportation vehicle?

D.     Whether the District Court erred as a matter of law in finding Lopez covered by the of the Section 1 exemption to the FAA and refusing to compel Lopez's Private Attorneys General Act ("PAGA") claims to individual arbitration

7

by applying a legal analysis focused on Lopez's working environment – not Lopez's work itself – in direct contravention of the instructions given by *Saxon* for how to evaluate application of the Section 1 exception?

4877-1995-6569.3

## STATUTORY PROVISIONS INVOLVED

**Section 1 of the FAA, 9 U.S.C. § 1, provides**:

"'Maritime transactions,' as herein defined, means charter parties, bills of lading of water carriers, agreements relating to wharfage, supplies furnished vessels or repairs to vessels, collisions, or any other matters in foreign commerce which, if the subject of controversy, would be embraced within admiralty jurisdiction; 'commerce,' as herein defined, means commerce among the several States or with foreign nations, or in any Territory of the United States or in the District of Columbia, or between any such Territory and another, or between any such Territory and any State or foreign nation, or between the District of Columbia and any State or Territory or foreign nation, but nothing herein contained shall apply to contracts of employment of seamen, railroad employees, or any other class of workers engaged in foreign or interstate commerce."

**Section 2 of the FAA, 9 U.S.C. § 2, provides**:

"A written provision in any maritime transaction or a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction, or the refusal to perform the whole or any part thereof, or an agreement in writing to submit to arbitration an existing controversy arising out of such a contract, transaction, or refusal, shall be valid,

9

irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract."

## STATEMENT OF THE CASE

## I. Relevant Factual Summary

Menzies provides a full range of aviation ground support services primarily to major international and domestic airlines throughout the world.  At is operation at Los Angeles International Airport ("LAX"), the services Menzies provides to its customers include into-plane fueling and fuel farm management and operations.[1]

Employees of Menzies at LAX working in these fueling classifications have long been represented by TEAMSTERS LOCAL #986 (the "Union").  (ER 82, 126-148).  Menzies and the Union are parties to parties to a collective bargaining agreement and related memorandums of agreement (the "CBA") that contain a "complete agreement on wages, hours of work, [and] working conditions," for employees.  (ER 128).  Additionally, for many years, Menzies has utilized an Alternative Dispute Resolution Policy ("ADR Policy") at its locations in the United States, including at LAX.  (ER 58).  For employees who choose to be bound by the ADR Policy, they agree with Menzies that any claims arising from the employment relationship, other than certain categories of statutorily-excluded

---

[1] Lopez's Complaint alleges little detail regarding the nature of Menzies' business and the operations where he worked, and given the early procedural posture of this case, Menzies has had little opportunity to develop the record sufficient to support the assertions of this paragraph.  However, other than the fact that Menzies operates in the aviation industry, the background stated here is not relevant to the outcome of this appeal, and Menzies therefore provides this non-cited information purely as context for this Court's understanding.

claims, must be brought in binding arbitration – including "claims brought under the California Labor Code." (ER 58, 62).

Lopez commenced his employment with Menzies in 2007. (ER 59). Lopez worked as a Fueler, which required him to physically pump fuel into storage tanks on aircraft. (ER 43). Notably, Lopez does not contend that he had any involvement loading commercial cargo, passenger baggage, or any other type of goods onto aircraft in connection with his job, effectively conceding his duties and responsibilities were limited to fueling operations. (ER 43). During his employment with ASIG, Plaintiff was a member of the Union and the terms and conditions of the CBA applied to him. (ER 82). On June 28, 2019, Plaintiff executed his written assent to be by bound by the ADR Policy (the "Arbitration Agreement"). (ER 17-19).

## II.    **Relevant Procedural Summary**

On July 21, 2021, Lopez commenced the underlying lawsuit by filing an unverified Complaint in the Superior Court of California, County of Los Angeles, entitled "DANNY LOPEZ, individually, and on behalf of all other aggrieved employees v. AIRCRAFT SERVICE INTERNATIONAL, INC., a corporation; AIR MENZIES INTERNATIONAL (USA), INC., a corporation; MENZIES AVIATION (USA), INC., a corporation; and DOES 1 through 50, inclusive" Case No. 21STCV26797 (the "Complaint"). (ER 149). Menzies removed this action to

12

the United States District Court for the Central District of California on September 2, 2021.  (ER 71).  The Complaint alleges a single cause of action under PAGA, premised on the following alleged violations of the California Labor Code: (1) Failure to Provide Meal Periods; (2) Failure to Provide Rest Periods; (3) Failure to Pay Overtime Wages; (4) Failure to Pay Minimum Wages; (5) Failure to Permit Inspection of Records; (6) Failure to Timely Pay Wages; (7) Failure to Pay All Wages Upon Termination; (8) Failure to Provide Accurate Itemized Wage Statements; and (9) Failure to Reimburse.  [ER 149, 159.]  These claims fall within the scope of the ADR Policy and Arbitration Agreement, which includes "claims brought under the California Labor Code."  (ER 58, 62).

On July 14, 2022, Menzies filed the Motion pursuant to the FAA seeking to enforce Lopez's agreement to arbitrate on an individual basis the claims asserted in the Complaint.  (ER 44-45).  Lopez opposed the Motion on several grounds, but only one is relevant to this appeal – whether Lopez qualifies as an interstate transportation worker and is therefore exempt from the FAA's coverage pursuant to *Saxon*'s analysis of Section 1 of the FAA's exclusion for "contracts of employment of seamen, railroad employees, or any class of workers engaged in foreign or interstate commerce."  (ER 25, 31-33).  With respect to that argument, Lopez asserted that because he "physically added fuel to both passenger and cargo airplanes involved in both foreign and domestic interstate travel," he is exempt

13

from the FAA. (ER 32). What Lopez <u>did not assert</u> – and cannot assert – is that he participated in any way in the loading of "cargo," passenger baggage or goods – items placed onto an aircraft for the specific purpose of transporting them in interstate commerce. (ER 32, 43). Menzies identified this critical distinction to the District Court in its reply brief, noting that fuel is not "cargo" and not something loaded onto an aircraft for the purpose of transporting it in interstate commerce. (ER 10-12). Instead, as Menzies explained, Lopez loaded fuel onto an aircraft so the aircraft itself could move cargo in interstate commerce, making fuel an instrumentality of the aircraft's movement, but not itself cargo. (ER 10-12). As a consequence, Menzies argued, Lopez's job responsibilities do not constitute the direct involvement in the transportation of goods across state or international borders as required under *Saxon*. (ER 10-12).

Purporting to follow *Saxon*'s analysis of this exemption based on employees who directly participate in the loading of "cargo" onto aircraft, the District Court explicitly acknowledged that "an employee who adds fuel to cargo planes is not literally moving goods" as relied upon and mandated by the *Saxon* analysis. (ER 7). Having made this concession and then purporting to apply *Saxon*'s focus on employees who directly participate in the loading of "cargo" onto aircraft, the District Court nevertheless denied the Motion, concluding that because Lopez's work occurred in "physical and temporal proximity to the interstate movement of

14

goods," adding fuel to an airplane is "so closely related to interstate transportation as to be practically a part of it." (ER 7). In other words, the District Court denied the Motion because it focused not on the actual work performed by Lopez himself, but rather on the working environment where he carried out his duties. (ER 7). This appeal followed.

4877-1995-6569.3

## SUMMARY OF THE ARGUMENT

I.     The Supreme Court's extensive jurisprudence interpreting the FAA repeatedly speaks to the statute's liberal policy favoring arbitration and the importance of lower courts interpreting and applying the FAA consistent with that policy.  *AT&T Mobility, LLC v. Concepcion*, 563 U.S. 333 (2011).  As a consequence, even though the FAA exempts from its coverage certain transportation workers under the Section 1 residual clause, the Supreme Court has cautioned lower courts to construe that clause narrowly and apply it erring in favor of arbitration unless the circumstances at issue clearly compel a different result. *Circuit City Stores, Inc. v. Adams,* 532 U.S. 105, 111, 114-15 (2001).  The District Court had an obligation to interpret Section 1 and apply it in this case consistent these directions from the Supreme Court, but failed to do so.

II.     In *Saxon*, the Supreme Court faithfully balanced Section 1's exclusions against the FAA's liberal policy favoring arbitration, and in so doing, it afforded lower courts a two-step framework for how to conduct their own analyses for future matters.

      A.     *Saxon* directs that in applying FAA Section 1 to a specific situation, courts must focus on the particular workers involved and the actual work they perform – <u>not</u> the environment where the workers carry out their duties or the employer's business.  142 S. Ct. at 1788.

16

B.    In so doing, the Court articulated two practically-focused, easy-to-apply principles to identify transportation workers under Section 1 of the FAA: (i) the class of workers at issue must themselves have hands-on contact with "goods" or "cargo"; and (ii) the workers' hands-on contact with such "good" or "cargo" must have direct involvement in their movement across state lines. *Id*. at 1789. If workers' duties do not include hands-on contact with "goods" or "cargo" they are not transportation workers, and even if they have such hands-on contact, if that contact is not directly involved the goods' interstate movement, they still are not transportation workers. *Id*. at 1789-90.

III.    The District Court failed to follow *Saxon*'s prescribed analytical framework and failed to apply fundamental principles it identified. Instead, relying on Fair Labor Standards Act jurisprudence instead of FAA jurisprudence, it invented and then applied an erroneous test focused on the employer's industry and the individual's working environment that does not square with *Saxon*.

A.    There is no dispute that the covered class of workers at issue is Fuelers whose job responsibilities are limited to hands-on contact with jet fuel. They have no role in the loading or unloading of goods or cargo onto or off from aircraft.

17

B.  Despite conceding fuel does not qualify as cargo or goods, the District Court failed to grasp this fact's the controlling effect, choosing instead to make a legal conclusion based on fuelers' working environment, not their work itself.  The result reached by the District Court can only stand if "fuel" somehow qualifies as "cargo" or "goods."

C.  Fuel clearly does not qualify as "cargo" or "goods."  Fuel does not go onto an aircraft at Point A for the purpose of delivering it to Point B.  Upon the aircraft's arrival at the destination, no one offloads jet fuel for the purpose of turning custody of it over to another or moving it along a consumer or supply chain.  Fuel only goes onto a plane so the plane itself can go from Point A to Point B.  As a consequence, fuel is an instrumentality of the transportation process, not a good or service.  As a matter of law under *Saxon* then, fuelers cannot qualify as transportation workers under the FAA Section 1 exception.

D.  Even if fuel could somehow constitute "goods" or "cargo," the District Court's decision below still requires correction because fuelers have no direct involvement in the movement of goods across state lines.  They therefore cannot qualify as transportation workers.

4877-1995-6569.3

## STANDARD OF REVIEW

This Circuit affords no deference to a district court's decision to grant or deny a motion to compel arbitration, and reviews such an order *de novo*. *O'Connor v. Uber Techs., Inc.,* 904 F.3d 1087, 1093 (9th Cir. 2018) (*quoting Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983)); *Ashbey v. Archstone Prop. Mgmt., Inc.*, 785 F.3d 1320, 1323 (9th Cir. 2015); *Bushley v. Credit Suisse First Bos.*, 360 F.3d 1149, 1152 (9th Cir. 2004). This Circuit also evaluates all district court conclusions regarding the validity and scope of arbitration clauses *de novo*. *Knutson v. Sirius XM Radio Inc.*, 771 F.3d 559, 564 (9th Cir. 2014). Similarly, this Circuit reviews a district court's legal conclusions and whether it correctly applied the substantive law to the relevant issues on a *de novo* basis. *Suzuki Motor Corp. v. Consumers Union of U.S., Inc.*, 330 F.3d 1110, 1131-32 (9th Cir. 2003); *Fed. Trade Comm'n v. Qualcomm Inc.*, 969 F.3d 974, 993 (9th Cir. 2020) ("we review de novo [the district court's] conclusions of law and any mixed questions of law and fact"); *Landis v. Wash. State Major League Baseball Stadium Pub. Facilities Dist.*, 11 F.4th 1101, 1105 (9th Cir. 2021) ("The district court's legal conclusions are reviewed de novo").

19

# **ARGUMENT**

## I.    **The District Court Had A Duty To Interpret The Section 1 Exception Narrowly Pursuant To The FAA's Liberal Policy Favoring Arbitration**

The principal purpose of the FAA is to ensure that "private arbitration agreements are enforced according to their terms," and the Supreme Court has repeatedly reflected upon and reiterated that this principal purpose of the FAA mandates a liberal policy favoring arbitration in response to arguments seeking to restrict it.  *AT&T Mobility, LLC v. Concepcion*, 563 U.S. 333 (2011); *see also* 9 U.S.C. § 2; *Green Tree Fin. Corp. v. Randolph*, 531 U.S. 79, 91 (2000); *Perry v. Thomas*, 482 U.S. 483, 489 (1987).  The FAA's coverage is sweeping, reflecting an "exercise [of] Congress' commerce power to the full."  *Allied-Bruce Terminix Cos. v. Dobson,* 513 U.S. 265, 277 (1995).  Section 2 of the FAA provides that every arbitration agreement set forth in a "maritime transaction or a contract evidencing a transaction in-volving commerce … shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2.  This expansive wording "compels judicial enforcement of a wide range of written arbitration agreements," including those found in employment contracts.  *Circuit City Stores, Inc. v. Adams,* 532 U.S. 105, 111, 113-14 (2001).

In a provision often referred to as "the residual clause," Section 1 carves out an exception to the FAA's otherwise expansive coverage for "contracts of

employment of seamen, railroad employees, or any other class of workers engaged in foreign or interstate commerce."  9 U.S.C. § 1; *see Circuit City*, 532 U.S. at 114-15.  However, consistent with its longstanding observations of the FAA's liberal and expansive policy favoring arbitration, the Supreme Court has also emphasized that the FAA itself mandates narrow construction of this residual clause:

> "We must, of course, construe the "engaged in commerce" language in the FAA with reference to the statutory context in which it is found and in a manner consistent with the FAA's purpose. These considerations, however, further compel that the §1 exclusion provision be afforded a narrow construction. As discussed above, the location of the phrase "any other class of workers engaged in … commerce" in a residual provision, after specific categories of workers have been enumerated, undermines any attempt to give the provision a sweeping, open-ended construction. And the fact that the provision is contained in a statute that "seeks broadly to overcome judicial hostility to arbitration agreements," *Allied-Bruce*, 513 U.S., at 272-273, which the Court concluded in *Allied-Bruce* counseled in favor of an expansive reading of §2, gives no reason to abandon the precise reading of a provision that exempts contracts from the FAA's coverage."

*Id.*  As a result, the "FAA forecloses the construction of § 1 … which would exclude all employment contracts from the FAA," and the residual clause only covers "transportation workers."  *Id*. at 105.

In light of the foregoing, the District Court had an obligation to interpret *Saxon* and apply its reasoning carefully in line with the FAA's liberal policy favoring arbitration and it compulsion that "the §1 exclusion provision be afforded a narrow construction."  *Id*. at 114-15.  However, even as it conceded "an employee who adds fuel to cargo planes is not literally moving goods," as shown

*infra*, the District Court failed to follow the analytical roadmap dictated by *Saxon*, ignoring the mandatory focus on "direct involvement with interstate movement of goods" and applying an impermissible "physical and temporal proximity to the interstate movement of goods" test. (ER 7). This approach was not faithful to *Saxon* and the FAA, and was in and of itself error by failing to follow the required narrow construction of §1, resulting in an outcome at odds both *Saxon* and how other courts have correctly interpreted the opinion.

II.     ***Saxon* Creates A Clear Roadmap For Identifying Transportation Workers Under The FAA Tightly Focused On Hands-On Contact With Goods And Direct Participation Moving Them Across State Lines**

In last term's *Saxon* opinion, the Supreme Court focused its analysis on employees "when they handle[d] goods traveling in interstate and foreign commerce, either to load them for air travel or to unload them when they arrive." *Saxon*, 142 S. Ct. at 1787, 1793. Within that universe of workers, the Court laid out a two-step framework for performing the required narrow construction of the §1 residual clause: (i), first, a court must determine the "class of workers" at issue, and (ii) the court must determine whether that class of workers is "engaged in foreign or interstate commerce" under the FAA. *Id*. at 1788. Working its way through that two-step framework then, *Saxon*'s language makes clear the Court expects lower courts to focus carefully on the worker's actual contact with the goods themselves and direct participation in their actual interstate transportation.

22

### A.     The Actual Work Performed By The Employee – Not The Employer's Industry Or The Worker's Environment – Controls

With respect to the first step for to determine whether an individual qualifies as a "transportation worker" for purposes of the FAA, the Court made clear a "class of workers is defined by the 'actual work'" that those workers typically do on the job, "not what [the employer] does generally." *Id*.  It accordingly explicitly rejected the twin arguments that "air transportation '[a]s an industry" is engaged in interstate commerce" such that any "airline employees" constitute a "class of workers" covered by Section 1.  *Id*. at 1788; *see also Bissonnette v. LePage Bakeries Park St., LLC,* 49 F.4th 655, 661 (2d Cir. 2022) ("as *Saxon* teaches, not everyone who works in a transportation industry is a transportation worker").  Focusing on the "performance of work" to identify the appropriate "class of workers" for FAA purposes, the Court defined that class as those "who physically load and unload *cargo* on and off airplanes on a frequent basis."  *Saxon*, 142 S. Ct. at 1788 (emphasis supplied).

Turning to how to approach whether the defined class of workers is "engaged in foreign or interstate commerce," the Court clarified two key guiding principles for how the FAA guides this standard: "any class of workers *directly involved in transporting goods* across state or international borders falls within §1's exemption." *Id*. at 1789-90 (emphasis added).  "Put another way, transportation workers *must* be 'actively engaged in transportation' of those *goods*

across borders via the channels of foreign or interstate commerce." *Id*. (emphasis supplied), *citing Circuit City*, 532 U.S. at 115. To fall within the exception, the class of workers must "exhibit this central feature of a transportation worker." *Id*.; *Nair v. Medline Indus., Inc.*, No. 2:22-cv-00331-DAD-JDP, 2023 WL 2636464, at *4 (E.D. Cal. Mar. 24, 2023) ("The question then is whether the interstate movement of goods was "a 'central part of the class members' job description")," *citing Capriole v. Uber Techs., Inc.*, 7 F.4th 854, 865 (9th Cir. 2021). Applying this standard to "cargo loaders," the Court then repeatedly emphasized the importance of an individual's work involving the loading of "cargo" and/or goods as the "central feature" a class of work must exhibit for application of the transportation worker exception to the FAA. *Saxon*, 142 S. Ct. at 1790 ("a worker is engaged in that transportation, when she is 'doing the work of unloading' or loading cargo from a vehicle carrying goods in interstate commerce").

### B. For The Section 1 Exception To Apply, The Worker At Issue Must Have Hands-On Contact With "Goods" Or "Cargo" *And* Direct Involvement In Their Interstate Movement

Looking at *Saxon*'s analysis under the larger umbrella of the Supreme Court's FAA jurisprudence repeatedly recognizing its liberal policy favoring arbitration and the narrow construction required of the residual clause, two fundamental principles emerge that distill identification of covered "transportation workers" to practical concepts. First, the FAA §1 exception only applies to

24

employees whose work involves a hands-on relationship with "goods" and/or "cargo" such that any workers employed by a company engaged in interstate transportation but who do not themselves have a hands-on relationship with "goods" and/or "cargo" remain subject to Section 2's expansive scope. Second, even if the workers have the requisite job duties and hands-on relationship with "goods" and/or "cargo," unless they have *direct* involvement in the *actual* loading or unloading of such goods/cargo onto the interstate transportation vehicle, Section 2 continues to apply. *Saxon*, 142 S. Ct. at 1789-90; *Immediato v. Postmates, Inc.*, 54 F.4th 67 (1st Cir. 2022) (class of workers must actively contribute to the larger interstate movement of goods).

These two principles become all the more clear through the sound analyses by other courts applying *Saxon* to analyze whether a worker falls into the narrow Section 1 residual clause. Indeed, the few courts that have applied *Saxon* (other than the District Court in this action) have faithfully identified and correctly applied these two keystone principles.[2] The Central District of California's recent

---

[2] *Compare Immediato*, 54 F.4th at 78 (a "faithful reading of" Section demands the conclusion that couriers delivering goods from local restaurants and retailers lack requisite direct connection to the interstate transportation process), *Lopez v. Cintas Corporation*, 47 F.4th at 433 (Section 1 does not apply to intrastate-only drivers because they were not themselves directly involved in the process of interstate transportation of the goods); *Whitaker v. Enbridge (U.S.) Inc.*, __ F.Supp.3d __, 2022 WL 17405833, *4 (S.D. Tex. Dec. 2, 2022) (a pipeline inspector is not a "transportation worker" under Section 1 because he does not have a "direct" involvement in the "free flow of goods across borders"), *Holley-Gallegly v. TA*

analysis in *Holley-Gallegly* is particularly illustrative to this matter given its explicit recognition of the fundamental difference between hands-on contact with the instrumentalities of the transportation process (i.e. the things that make interstate transportation of the goods possible) and hands-on contact with the goods themselves. 2022 WL 9959778, at *3 "percetibl[e] connect[ion] to the … instrumentalities of interstate commerce" does not trigger the Section 1 residual clause because "maintaining an instrumentality of interstate commerce does not, by itself, bring an employee within the exception"); *see also Whitaker*, __ F.Supp.3d __, 2022 WL 17405833 at *6 (discussing *Holley-Gallegly* with approval).

The Supreme Court carefully balanced in *Saxon* the FAA's longstanding liberal policy favoring arbitration with its prior instruction that courts must construe the FAA's Section 1 residual clause to create a practical process for assessing its narrow scope to a given job function. Since *Saxon*, other courts have recognized and faithfully followed that process, including the *Holley-Gallegly*'s

---

*Operating, LLC*, Case No. EDCV 22-593 JBG (SHKx), 2022 WL 9959778, at *3 (C.D. Cal. Sept. 16, 2022) (truck mechanic servicing trucks that hauled material across state lines not exempt because mechanic's work related to the instrumentalities of the transportation process, not the cargo itself); *with Nair*, 2023 WL 2636464, at *4 (individual who directly loaded goods onto truck transporting those goods in interstate commerce exempted because he "played a direct and necessary role in advancing those goods across state lines"), *Valdez v. Shamrock Foods Co.*, Case No. 5:22-cv-01719-SSS-SHKx, 2023 WL 2624438 at *3-4 (C.D. Cal. Mar. 16, 2023) (commercial interstate driver who has both hands-on connection to the goods and direct involvement in the interstate portion of the transportation is exempt from the FAA), *and Rizvanovic v. United Parcel Serv., Inc.*, Case No. 1:21-cv-01278-CDB, 2023 WL 346800 at *5 (E.D. Cal. Jan. 20, 2023) (same).

insightful identification of the critical distinction between (i) the instrumentalities of interstate transportation and (ii) clear contact with the goods themselves and direct involvement in their movement across same lines.  The District Court should have done the same in this matter, but as demonstrated *infra*, it did not, focusing instead on Lopez's working environment and not his actual work at clear odds with *Saxon*'s requirements.  This Court should correct that error and direct the lower court to grant the Motion.

**III.    The District Court Did Not Follow *Saxon*'s Framework Nor Apply Its Fundamental Principles, Instead Inventing An Erroneous "Proximity To Goods And Transportation" Analysis That This Court Must Correct**

Viewed against the proper backdrop of the FAA and *Saxon*'s careful establishment of the two guiding principles that faithfully follow the required narrow construction of the residual clause, *Circuit City*, 532 U.S. at 114-15, it becomes clear the District Court failed to apply the proper analysis and erred in denying the Motion.  This Court must correct that error.

**A.    The Class Of Workers At Issue Here Is Fuelers With Job Responsibilities Limited To Hands-On Contact With Fuel**

Though the District Court never explicitly took the *Saxon*-mandated step of defining the "class of workers," its analysis repeatedly references "adding fuel" to passenger and cargo airplanes as the operative characterization of the nature of Lopez's work.  (ER 4-7).  For starters, there is no dispute that the "class of

27

workers" defined pursuant to Step One of the *Saxon* framework does not involve workers with any hands-on relationship with "goods" or "cargo" – a concession made by the District Court itself. (ER 7). Accordingly, the "class of workers" to which Lopez belonged are fuelers who physically add fuel to airplanes.

### A. The District Court Conceded Fuel Is Not "Cargo" Or "Goods" But Failed To See The Dispositive Nature Of That Distinction

Given *Saxon*'s express direction that interstate transportation workers must themselves have hands-on contact with "cargo" or "goods," the District Court could have only properly found Lopez fell within the Section 1 if fuel constitutes "goods" or "cargo" such that the District Court could then proceed to assess whether individuals who physically add fuel to airplanes are "engaged in interstate commerce." *Saxon*, 142 S. Ct. at 1789-90. Incredibly, the District Court admitted it could not and would not make this finding by conceding "an employee who adds fuel to cargo planes is not literally moving goods (as the plaintiffs in *Saxon* and *Rittman* did)." (ER 7). Having made that observation, the District Court still found – relying on interstate *commerce* authority under the Fair Labor Standards Act[3], not interstate *transportation* authority under the FAA – that fuelers are

---

[3] The District Court relied upon a single Fifth Circuit opinion over half a century old which found employees hauling fuel to planes "engaged in commerce" to justify its ruling. (ER 7). However, *Wirtz v. B. B. Saxon Co.*, 365 F.2d 457 (5th Cir. 1966) is an FLSA case – <u>not an FAA case</u>. The District Court accordingly failed to heed the fact that "[d]espite that statutes' similar language, courts have

"closer both physically and temporally to the actual movement of goods between states than a truck mechanic (as was the case in *Holley-Gallegly*)." (ER 7).

In so doing, even as the District Court identified another court's analysis of the critical distinction between (i) involvement in the *instrumentalities* of interstate transportation, and (ii) direct involvement in interstate transportation of *the goods themselves*, the lower court failed to apply that distinction – again at odds with other courts confronting the same issue. *Immediato*, 54 F.4th at 78; *Lopez*, 47 F.4th at 433; *Whitaker* 2022 WL 17405833, at *4, *Holley-Gallegly*, 2022 WL 9959778, at *3. Taking things a step further, instead of recognizing and applying the critical distinction between the interstate goods themselves and the instrumentalities of their interstate transportation, the District Court then invented the aforementioned "physical and temporal proximity to the movement of interstate goods" test – one that finds no support in FAA jurisprudence at all – to give an expansive interpretation to Section 1 residual clause that demands narrow construction. *Circuit City*, 532 U.S. at 114-15.

---

given the §1 exception a narrow reading" – another fact other post-*Saxon* courts have correctly recognized. *Whitaker,* 2022 WL 17405833, at *4 (*citing Circuit City*, 532 U.S. at 1310-11; *see also Lopez*, 47 F.4th at 432. By contrast, courts have made clear construction of the FLSA and its "engaged in commerce" language is a much broader proposition. *See, e.g., Walling v. Jacksonville Paper Co.*, 317 U.S. 564, 567-68 (1943) ("It is clear that the purpose of the Act was to extend federal control in this field throughout the farthest reaches of the channels of interstate commerce"); *see also* 29 CFR § 776.1 (describing FLSA's "broad remedial purposes"), § 776.8 ("the term *commerce* is very broadly defined.")

29

This determination that physical and temporal proximity to the actual movement of goods is irreconcilable with *Saxon*'s requirement that the work constitute direct (i.e., active) involvement in the transporting (i.e., actual movement) of goods. And it requires reversal unless this Court concludes that fuel is somehow "cargo" or "goods" at odds with the District Court's concession otherwise. This Circuit should not make that conclusion.

### B. Fuel Is An Instrumentality Of Transportation Not A Good, Such That Fuelers Cannot Be Transportation Workers Under *Saxon*

As the District Court itself conceded, fuel is not "cargo" and it is not "goods." (ER 7). Workers do not load fuel onto an aircraft for the purpose of transporting it from the aircraft's origination to its destination for delivery. Upon the aircraft's arrival at the destination, no one offloads jet fuel for the purpose of turning custody of it over to another or moving it along a consumer or supply chain. The fuel only goes onto a plane so the plane itself can go from Point A to Point B – not to move the fuel from Point A to Point B. In the same vein, a truck mechanic does not put brake or hydraulic fluid onto a commercial truck, or otherwise conduct maintenance tasks that result in fluids or objects such as seat belts, crossing state lines for the purpose of transporting them across state lines – the mechanic does so to permit the truck itself to safely and reliably transport goods in interstate commerce. Fuel, like any other part or fluid placed upon or into

a vehicle, is a necessary component to allow the vehicle to operate and enable the vehicle's movement. They are therefore not "goods" bound for an interstate journey – they are instrumentalities of the process of an interstate journey. Just like a truck mechanic then, a fueler is only "perceptibly connected" to the instrumentality of interstate commerce (i.e., the airplane) <u>which does not suffice to trigger the Section 1 exclusion consistent with *Saxon*</u>. *Immediato* 54 F.4th at 78; *Holley-Gallegly*, 2022 WL 9959778, at *3. As a consequence, because Fuelers like Lopez have no hands-on contact with goods or cargo moving across state lines, their physical or temporal proximity to others who might have such contact while the Fueler does not is irrelevant. Under *Saxon* and as a matter of law, Fuelers are not interstate transportation workers under the FAA.

The District Court's concession that "an employee who adds fuel to cargo planes is not literally moving goods (as the plaintiffs in *Saxon* and *Rittman* did)" should have marked the end of its analysis. (ER 7). In recognizing that key fact but nevertheless failing to understand its critical importance, the District Court reached an erroneous legal conclusion and derivatively erred by denying the Motion. This Court should correct that error, reverse the decision below, and compel Lopez's PAGA cause of action to arbitration.

**C.** **Fuelers Lack The Requisite Direct Involvement In Moving Goods Across State Lines To Qualify As Transportation Workers**

Even were it not determinative that fuel is an instrumentality, not "goods" or "cargo", the District Court would still have erred by inventing an analytical test based on "physical and temporal proximity to the actual movement of goods" that has no basis in precedent and defies the *Saxon* rule requiring direct involvement in the actual loading of the goods or cargo themselves onto the interstate transportation vehicle. As noted above, merely because an individual works for a transportation employer, and even if the individual has at some point a hands-on relationship with goods or cargo, the fact of that contact does not automatically exempt the worker from the FAA. *Saxon*, 142 S. Ct. at 1790 ("a worker is engaged in that transportation, when she is 'doing the work of unloading' or loading cargo from a vehicle carrying goods in interstate commerce"); *Bissonnette,* 49 F.4th at 661 ("as *Saxon* teaches, not everyone who works in a transportation industry is a transportation worker").

A ruling based on "physical and temporal proximity to the movement of goods" and that ignores "doing the work of unloading or loading goods from a vehicle carrying goods in interstate commerce" thus ignores the "direct involvement" requirement. All the post-*Saxon* decisions bear this out. Where other courts have found workers exempt from the FAA under *Saxon* (i.e., drivers), they have found both that the workers involved had some role both in loading and

32

unloading goods and the actual transporting of the goods themselves across state lines. As a result, even where they have denied FAA coverage, these cases reinforce the notion that prerequisite to exemption under Section 1 is active involvement in the physical movement of the actual goods themselves across state lines. *Immediato*, 54 F.4th at *78; *Bissonnette,* 49 F.4th at 661; *Lopez*, 47 F.4th at 433; *Whitaker*, 2022 WL 17405833 at *6; *Holley-Gallegly*, 2022 WL 9959778, at *3; *Nair*, 2023 WL 2636464, at *4; *Valdez*, 2023 WL 2624438 at *3-4; *Rizvanovic*, 2023 WL 346800 at *5. Fuelers do not handle goods whatsoever, let alone contribute directly to the physical movement of goods. They simply add fuel to airplanes so that the pilots, crew, and others can use the airplane to transport cargo and passengers to their destination. In other words, Fuelers themselves are an instrumentality that enables other workers to do the actual interstate transportation work. As such, they do not directly participate in the actual transportation of goods in interstate commerce.

Given that *Saxon* and the FAA clearly require more than work performed in direct proximity to the interstate transportation of goods, the District Court clearly erred in finding Lopez had "direct involvement" in the movement of goods or cargo across state lines. This Court should correct that error, reverse the District Court's erroneous order others, and direct this matter to proceed in arbitration.

33

## **CONCLUSION**

For the foregoing reasons, the final order of the District Court denying Menzies' Motion should be vacated, and the case remanded with instructions to grant the Motion and order this matter to arbitration where it belongs.

Date: April 10, 2023

FOLEY & LARDNER LLP

*/s/ Christopher Ward*
Christopher Ward
Kevin Jackson

*Attorneys for Appellants Aircraft Service International, Inc. and Menzies Aviation (USA), Inc.*

34

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

## Form 17. Statement of Related Cases Pursuant to Circuit Rule 28-2.6

*Instructions for this form:*
*http://www.ca9.uscourts.gov/forms/form17instructions.pdf*

**9th Cir. Case Number: 23-55015**

The undersigned attorney or self-represented party states the following:

[ x ]   I am unaware of any related cases currently pending in this court.

[  ] I am unaware of any related cases currently pending in this court other than the case(s) identified in the initial brief(s) filed by the other party or parties.

[  ] I am aware of one or more related cases currently pending in this court. The case number and name of each related case and its relationship to this case are:

**Signature** /s/ Christopher Ward        **Date** April 10, 2023

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

## Form 8. Certificate of Compliance for Briefs

**9th Cir. Case Number: 23-55015**

I am the attorney or self-represented party.

**This brief contains 7,144 words,** including 7,144 words manually counted in any visual images, and excluding the items exempted by FRAP 32(f). The brief's type size and typeface comply with FRAP 32(a)(5) and (6).

I certify that this brief *(select only one)*:

[X] complies with the word limit of Cir. R. 32-1.

[ ] is a **cross-appeal** brief and complies with the word limit of Cir. R. 28.1-1.

[ ] is an **amicus** brief and complies with the word limit of FRAP 29(a)(5), Cir. R. 29-2(c)(2), or Cir. R. 29-2(c)(3).

[ ] is for a **death penalty** case and complies with the word limit of Cir. R. 32-4.

[ ] complies with the longer length limit permitted by Cir. R. 32-2(b) because *(select only one)*:
  [ ] it is a joint brief submitted by separately represented parties;
  [ ] a party or parties are filing a single brief in response to multiple briefs; or
  [ ] a party or parties are filing a single brief in response to a longer joint brief.

[ ] complies with the length limit designated by court order dated _____.

[ ] is accompanied by a motion to file a longer brief pursuant to Cir. R. 32-2(a).

**Signature** /s/ Christopher Ward          **Date** April 10, 2023_____

## <u>CERTIFICATE OF SERVICE</u>

**9th Cir. Case Number: 23-55015**

I hereby certify that I electronically filed the foregoing/attached document(s) on

this date with the Clerk of the Court for the United States Court of Appeals for the

Ninth Circuit using the Appellate Electronic Filing system. Service on Case

Participants Who Are Registered for Electronic Filing:

| | |
|---|---|
| Matthew Warren Gordon | ***Attorneys for Plaintiff-Appellee, Danny*** |
| Matthew J. Matern | ***Lopez*** |
| Max Neal Sloves | |
| Matern Law Group, PC | Tel: (310) 531-1900 |
| 1230 Rosecrans Ave., Suite 200 | E-mail: *mgordon@maternlawgroup.com* |
| Manhattan Beach, CA 90266 | E-mail: *mmatern@maternlawgroup.com* |
| | E-mail: *msloves@maternlawgroup.com* |

Description of Document(s) (required for all documents):

**Appellants' Opening Brief**.

**Signature** /s/ Christopher Ward          **Date** April 10, 2023

4877-1995-6569.3