**Case No. 23-55015**

_____

**IN THE UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT**

_____

DANNY LOPEZ, individually, and on behalf of all other aggrieved
employees

*Plaintiff-Appellee*,

v.

AIRCRAFT SERVICE INTERNATIONAL, INC., a corporation and
MENZIES AVIATION (USA), INC., a corporation

*Defendants-Appellants*.

On Appeal from the United States District Court
for the Central District of California
No. 2:21-cv-07108-DMG-E
Hon. Dolly M. Gee

_____

**APPELLANTS' REPLY BRIEF**

_____

Christopher Ward (SBN 238777)
**FOLEY & LARDNER LLP**
555 S. Flower Street, Suite 3300
Los Angeles, CA 90071-2418
Telephone: (213) 972-4500
E-mail: cward@foley.com

Kevin Jackson (SBN 278169)
**FOLEY & LARDNER LLP**
11988 El Camino Real, Suite 400
San Diego, CA 92130-2594
Telephone: (858) 847-6700
E-mail: kjackson@foley.com

*Attorneys for Defendants-Appellants*
Aircraft Service International, Inc. and Menzies Aviation (USA), Inc.

4887-1297-1141.4

# **TABLE OF CONTENTS**

**Page**

TABLE OF CONTENTS ............................................................................ ii

TABLE OF AUTHORITIES .................................................................... iv

ARGUMENT ............................................................................................1

   I.   *Saxon*'s Mandate Of "Direct Involvement" With Transporting Interstate Goods Is Best Viewed Via A Practical "Hands On" Analysis That Courts Can Apply Consistently With *Saxon* And Prior Caselaw.2

       A.   *Saxon*'s "Direct Involvement" Test, Described Through "Physical Loading And Unloading Of Goods," Is A "Hands-On" Analysis .............................................................................4

       B.   The "Hands-On" Understanding Of "Direct Involvement" Is A Practical Way To Follow *Saxon* And Promote Consistent Results ..........................................................................................6

       C.   The District Court Is The Only Court, Pre- Or Post-*Saxon*, Applying The Residual Clause To Workers Having No Direct Involvement In The Movement Of Interstate Goods..................8

   II.   By Utilizing Both A "Temporal And Physical Proximity" And "So Clearly Related" Standard, The District Court Misunderstood *Saxon*'s Requirement Of Direct, Physical Involvement With Interstate Goods..................................................................................12

       A.   The District Court's Language Makes Plain It Adopted An Improper "Temporal And Physical Proximity" Analysis.........13

       B.   "So Closely Related" Is Not Part Of The *Saxon* Analysis And Even If It Were, The District Court Erred Applying It To Direct Involvement With Goods As Opposed To Interstate Movement ..................................................................................15

       C.   By Adopting Two Inapplicable Tests, The District Court Made Clear Fuelers Are Not "Clearly Covered" By § 1 And Erred ..19

4887-1297-1141.4

III.    Lopez's Expansive Interpretations Of "Transportation Worker" Drawn From Remedial Statutes And Reliance On Railroad Employee Cases Have No Place Here And Cannot Square With *Saxon*'s Plain Language .............................................................................20

    A.    Interpretations Of "Interstate Commerce" Principles Drawn From Remedial Statutes Are Improper In A Residual Clause Case ....................................................................................21

    B.    Lopez's Reliance On FELA Railroad Employee Cases To Interpret The Residual Clause Is Misplaced Because Railroad Workers Are An Enumerated Category Explicitly Covered By § 1 ......................................................................................23

    C.    *Saxon*'s Language Leaves No Space For Broad Interpretation Of The Residual Clause's Transportation Worker Exemption.24

CONCLUSION ........................................................................................26

Form 8. Certificate of Compliance for Briefs ............................................1

CERTIFICATE OF SERVICE ....................................................................2

4887-1297-1141.4

# TABLE OF AUTHORITIES

**Page(s)**

Cases

*Atchison, Topeka & Santa Fe Ry. Co. v. Buell*,
  480 U.S. 557 (1987) ............................................................21

*Baltimore & Ohio Southwestern R. Co. v. Burtch*,
  263 U.S. 540, 44 S. Ct. 165, 68 L. Ed. 433 (1924) ............................................16

*Capriole v. Uber Tech., Inc.*,
  7 F.4th 854 (9th Cir. 2021) .......................................................23

*Carmona v. Domino's Pizza, LLC*,
  73 F.4th 1135 (9th Cir. 2023) ...............................................7

*Circuit City Stores, Inc. v. Adams*,
  532 U.S. 105 (2001).................................................... 3, 19, 22, 23

*Cole v. Burns Int'l Sec. Services*,
  105 F.3d 1465 (D.C. Cir. 1997) ...........................................11

*Epic Sys. Corp. v. Lewis*,
  584 U.S. ___, 138 S. Ct. 1612 (2018)........................................ 19, 20

*Fraga v. Premium Retail Servs, Inc.*,
  61 F.4th 228 (4th Cir. 2023) ...............................................6, 8

*Gabay v. Roadway Movers, Inc.*,
  No. 22-CV-06901 (JLR), 2023 WL 3144310 (S.D.N.Y. Apr. 28, 2023)............10

*Holley-Gallegly v. TA Operating, LLC*,
  Case No. EDCV 22-593 JBG (SHKx), 2022 WL 9959778 (C.D. Cal.
  Sept. 16, 2022) ......................................................9, 11

*In re Grice*,
  974 F.3d 950 (9th Cir. 2020) ...................................................... 10, 14

*Lenz v. Yellow Transp., Inc.*,
  431 F.3d 348 (8th Cir. 2005) ...............................................10

*Lopez v. Cintas Corp.*,
    47 F.4th 428 (5th Cir. 2022) ........................................................ 19, 20

*Nair v. Medline Indus., Inc.*,
    No. 22-CV-00331-DAD-JDP, 2023 WL 2636464 (E.D. Cal. Mar. 24, 2023)......9

*Palcko v. Airborne Express, Inc.*,
    372 F.3d 588 (3rd Cir. 2004) .............................................................10

*Pfizer Inc. v. India*,
    434 U.S. 308 (1978) ...........................................................................22

*Rittman v. Amazon.com, Inc.*,
    971 F.3d 904 (9th Cir. 2020) ................................................... 7, 9, 13

*Singh v. Uber Tech., Inc.*,
    67 F.4th 550 (3rd Cir. 2023) .............................................................18

*Southwest Airlines Co. v. Saxon*,
    No. 21-309, 596 U.S. ___, 142 S. Ct. 1783, 213 L. Ed. 2d 27 (2022) ........ Passim

*Valdez v. Shamrock Foods Co.*,
    Case No. 5:22-cv-01719-SSS-SHKx, 2023 WL 2624438 (C.D. Cal. Mar. 16, 2023) ...........................................................................................9

*Waithaka v. Amazon.com, Inc.*,
    966 F.3d 10 (1st Cir. 2020)....................................................... 7, 18, 22

*Wallace v. Grubhub Holdings, Inc.*,
    970 F.3d 798 (7th Cir. 2020) ................................................... 10, 23

*Walling v. Jacksonville Paper Co.*,
    317 U.S. 564 (1943)...........................................................................21

*Whitaker v. Enbridge (U.S.) Inc.*,
    __F.Supp.3d __, 2022 WL 17405833 (S.D. Tex. Dec. 2, 2022) ....................9, 11

*Wirtz v. B. B. Saxon Co.*,
    365 F.2d 457 (5th Cir. 1966) .............................................................21

## Regulations

29 CFR § 776.1 ........................................................................................21

Defendants-Appellants Aircraft Service International, Inc. and Menzies Aviation (USA), Inc. (hereinafter collectively "Menzies") reply as follows to the arguments made in the Answering Brief by Plaintiff-Appellee Danny Lopez.

## ARGUMENT

Much like the District Court's order erroneously denying Menzies' Motion to Compel Arbitration pursuant to the Federal Arbitration Act ("FAA"), the Answering Brief filed by Lopez fastidiously avoids confronting the Supreme Court's precise language in *Southwest Airlines Co. v. Saxon*, No. 21-309, 596 U.S. ___, 142 S. Ct. 1783, 213 L. Ed. 2d 27 (2022). For all its length, the Answering Brief articulates no valid reason to uphold a first-ever application of the FAA's residual clause to workers with no responsibilities directly relating to the physical loading and unloading of goods. That is *Saxon*'s explicit requirement, and both the District Court and Lopez concede it is not present here even as they fail to grasp the dispositive nature of that concession.

The fact that the Supreme Court did not use the specific phrase "hands on" does not support Lopez's claim that *Saxon* allows for loose affiliation between workers' duties and interstate goods. Rather, by repeatedly describing "direct involvement" with interstate goods through repeated emphasis on frequent "physical loading and unloading of cargo," the Supreme Court directed the use of an easily applied, practical approach lower courts consistently followed before, and

have reiterated as critical after, *Saxon*.  Lopez's misguided denial of the District

Court's adoption of an improper "physical and temporal proximity test" and claim

that *Saxon* endorsed a "so closely related" test to evaluate workers' direct

relationship with interstate goods themselves also cannot change what *Saxon* said

and what the District Court failed to heed.  That the Answering Brief then turns to

inapplicable remedial statutes and caselaw inapposite to the narrow construction

the residual clause demands and *Saxon*'s language reinforces how the District

Court erred by a first-ever application of the residual clause to workers with no

direct responsibility for the loading and unloading of interstate goods.  This Circuit

should correct that error and send this matter to arbitration.

I.  **<u>*Saxon*'s Mandate Of "Direct Involvement" With Transporting Interstate Goods Is Best Viewed Via A Practical "Hands On" Analysis That Courts Can Apply Consistently With *Saxon* And Prior Caselaw</u>**

Lopez attempts to refute Menzies' contention that *Saxon* directs courts to

analyze the §1 residual clause by focusing on whether workers have "hands-on"

contact with interstate goods, claiming *Saxon* never used such language.  While

superficially true that *Saxon* never uses the phrase "hands on," Lopez's arguments

ignore how the language the Supreme Court repeatedly chose demonstrates that a

"hands on" understanding is the clear and practical implication from the mandate

that transportation workers be "*directly involved in transporting goods* across state

or international borders" and "'actively engaged in transportation' of those *goods*

2

across borders via the channels of foreign or interstate commerce." *Id*. at 1789-90 (emphasis added), *citing Circuit City Stores, Inc. v. Adams,* 532 U.S. 105, 115 (2001). Having established these requirements, *Saxon* repeatedly emphasizes the importance of a physical relationship with the goods – in other words, "hands-on" involvement – as the "central feature of a transportation worker." *Id*. at 1790 ("a worker is engaged in that transportation, when she is 'doing the work of unloading' or loading cargo from a vehicle carrying goods in interstate commerce").

Understanding *Saxon* through "hands-on" contact with interstate goods is more than just argument by Menzies; it is a practical, easy-to-follow analytical path for lower courts to follow that promotes consistent results derived from facts, not arbitrary line-drawing based on ambiguities. It thus comes as little surprise that both before and after *Saxon*, courts have consistently analyzed the residual clause with an implicit understanding that transportation workers must have an immediate relationship with goods and unequivocal responsibility for their movement in interstate commerce. The District Court is not merely an outlier in finding otherwise – it is the first court to apply the residual clause to a class of employees with no responsibility either for hands-on movement of goods or direct supervision of workers with such responsibility. It erred in going against *Saxon* and failing to understand how to apply the residual clause to Fuelers, and this Circuit must correct that mistake.

3

**A.** *Saxon***'s "Direct Involvement" Test, Described Through "Physical Loading And Unloading Of Goods," Is A "Hands-On" Analysis**

As noted above, *Saxon* teaches that to qualify as transportation workers under the residual clause, the class of employees must be "*directly involved* in transporting goods across state or international borders." *Id*. at 1789-90 (emphasis added). Looking at the Supreme Court's careful language as to how it applied this "directly involved" phrase as a practical matter, it stands out how many times the Court either explicitly or implicitly identifies the act of <u>physically loading and unloading</u> cargo on and off airplanes <u>on a frequent basis</u> as the linchpin of the "direct involvement in transporting goods" requirement.[1]  It was critical to the Supreme Court's analysis that "[f]requently, ramp supervisors step in to load and unload cargo alongside ramp agents." *Id*. at 1787.  And throughout the opinion, *Saxon*'s wording explicitly refers to the act of "physically loading and unloading" cargo and/or goods, making "physically" more than a passing reference and emphasizing the importance of doing the actual work of loading or unloading goods to have the requisite "direct involvement" and "active engagement" in the transportation of goods in interstate commerce.  *Id*. at 1787, 1789-90 ("Her work

---

[1] Merriam-Webster defines "directly" to mean "in immediate physical contact." *See* https://www.merriam-webster.com/dictionary/directly.  It also defines "physically" to mean "in respect to the body."  *See* https://www.merriam-webster.com/dictionary/physically?src=search-dict-box. Given these meanings involving "immediate physical contact" and use of the body, a class of workers logically cannot "physically" load or unload goods without having "hands-on" involvement with them.

4

frequently requires her to load and unload baggage, airmail, and commercial cargo") (ramp agents "physically load and unload baggage, airmail and freight") ("Frequently, ramp supervisors step in to load and unload cargo alongside ramp agents") ("Saxon belongs to a class of workers who physically load and unload cargo on and off airplanes on a frequent basis") ("We think it equally plain that airline employees who physically load and unload cargo on and off planes traveling in interstate commerce are, as a practical matter, part of the interstate transportation of goods") ("Likewise, any class of workers that loads or unloads cargo on and off airplanes bound for a different State or country is 'engaged in foreign or interstate commerce'").[2]

 "Direct involvement," understood through a supervisor's work "frequently requiring her to load and unload" cargo alongside ramp agents who "physically load and unload baggage" is effectively the same thing as "hands-on" involvement with interstate goods, expressed through different wording but arriving at the same practical destination.  Lopez's contention that "hands on" is not a proper way to understand *Saxon* simply dodges the plain meaning of the words the Supreme

---

[2] Measured against these repeated references to "physically" moving the goods, it stands out that both the Seventh Circuit and the Supreme Court made a careful point of rejecting the district court's finding that the "mer[e] handling [of] goods" was insufficient to satisfy the residual clause exemption.  *Id.* at 1787.  It also stands out that the Supreme Court specifically raised the question, but refrained from answering, "whether supervision of cargo loading alone would suffice," at least suggesting that this one-step removal from physically loading or unloading of cargo might eliminate the necessary "direct involvement."  *Id.* at 1789 n.1.

Court repeatedly chose and ignores its repeated identification of the importance

that the supervisor at issue frequently loaded and unload cargo herself.

**B.     The "Hands-On" Understanding Of "Direct Involvement" Is A Practical Way To Follow *Saxon* And Promote Consistent Results**

Understanding *Saxon* and applying its requirement that transportation

workers be "directly involved in transporting goods across state or international

borders" through the practical requirement of "hands-on" contact with goods is

more than faithful adherence to the Supreme Court's language.  It is a practical

analytical mechanism that district courts can easily understand and apply, resulting

in far more consistent results than those based on the nebulous "so closely related"

and "physical and temporal proximity" approaches suggested by Lopez and the

District Court.[3]  After first defining the class of workers involved as *Saxon* directs,

a district court can quickly look at the duties performed by the workers and make

clear findings as to the frequency of their "direct involvement" with goods based

on their hands-on, physical participation in their movement (or, as suggested by

*Fraga v. Premium Retail Servs, Inc.*, 61 F.4th 228 (4th Cir. 2023), direct that the

level of such hands-on involvement needs further factual development because it is

a dispositive fact, *see id*. at 236).  If the court finds the requisite level of such

_____

[3] *See* Sections II.A and II.B *infra* for discussion on the erroneous nature of the District Court's reliance on temporal and physical proximity to goods and "so closely related" language, and Lopez's mistaken contentions regarding their utility.

6

contact, it can either conclude the individuals are transportation workers if they transport the goods themselves across state lines, and if not, apply the body of law faithful to *Saxon* that assesses a worker's hands-on involvement in the interstate movement of goods based on the workers' intrastate actions. *See*, *e.g.*, *Carmona v. Domino's Pizza, LLC*, 73 F.4th 1135, 1138 (9th Cir. 2023) (§ 1 exemption applies to intrastate drivers who themselves transport interstate goods); *Rittman v. Amazon.com, Inc.*, 971 F.3d 904, 915-916 (9th Cir. 2020) (same); *Waithaka v. Amazon.com, Inc.*, 966 F.3d 10, 26 (1st Cir. 2020) (same).

However, when the workers' physical, hands-on participation in the interstate movement of goods comes out of the equation, "the answer will not always be so plain" as to the question of how "direct" a class of workers' involvement is. *Saxon*, 142 S. Ct. at 1789 n.2. Indeed, it is an open question following *Saxon* whether mere supervision of employees with such hands-on contact, devoid of frequent participation in loading and unloading goods, suffices. *Id.* at 1789 n.1. Consequently, in the amorphous space opened by elimination of "hands on" as an analytical proxy for how to understand and apply "direct involvement," there is far more ambiguity if district courts can use boundaryless concepts like "necessary to transportation," "nexus to transportation" and "physical and temporal proximity to transportation" while applying *Saxon*'s "direct involvement" mandate. In turn, that opens the door for a broad spectrum of results

7

diverging from any number of factual circumstances – and consequently, unnecessary appellate litigation.[4]   Applying *Saxon*'s repeated invocation of and emphasis on the actual, physical act of loading and unloading goods as part of their interstate journey not only eliminates the challenge for district courts trying to understand "direct involvement," it is a practical standard consistent with *Saxon* that lower courts can easily follow.

### C.    The District Court Is The Only Court, Pre- Or Post-*Saxon*, Applying The Residual Clause To Workers Having No Direct Involvement In The Movement Of Interstate Goods

Several post-*Saxon* cases reinforce the practical understanding of hands-on contact with the goods themselves as a threshold requirement for application of the residual clause.  The recent analysis in *Fraga* is particularly insightful because the Fourth Circuit found it could not determine whether the residual clause applied without further facts showing how frequently the class of workers at issue engaged in hands-on work with interstate goods – thereby highlighting how critical frequent "hands-on" contact is to the analysis.  61 F.4th at 236 (remanding for factual findings critical to arbitrability because whether "merchandisers belonged to a

---

[4] Lopez contends in his Opening Brief that a "so closely related" standard is practical and workable without offering any explanation as to how it can be workable in practice relative to the workers' direct involvement with the interstate goods.  At most he claims courts have been able to apply this standard before – which is true only to the extent courts use the standard to analyze the workers' interstate and intrastate movements.  *See* Section II.B.2 *infra*.

8

close of workers who sort, load, and transport goods turns on how often they performed that work" as opposed to other duties that did not involve direct work with the goods themselves).[5]  And in two of the three post-*Saxon* cases where the class of workers did not have a hands-on relationship with the goods, the district courts wisely found the workers did not have "direct involvement" in the interstate transportation of goods.  *See Whitaker v. Enbridge (U.S.) Inc.*, __F.Supp.3d __, 2022 WL 17405833, *2, 4 (S.D. Tex. Dec. 2, 2022) (specifically referring to *Saxon*'s use of the expression "physically handled and loaded cargo onto and off of planes" as key to *Saxon*'s meaning) (a pipeline inspector is not a "transportation worker" because he does not have a "direct" involvement in the "free flow of goods across borders"); *Holley-Gallegly v. TA Operating, LLC*, Case No. EDCV 22-593 JBG (SHKx), 2022 WL 9959778, at *3 (C.D. Cal. Sept. 16, 2022), *vacated and remanded on other grounds*, No. 22-55950, 2023 WL 4674372 (9th Cir. July 21, 2023) (mechanic servicing trucks hauling material across state lines not exempt because mechanic's work related to the instrumentalities of the transportation process, not the cargo itself).  And even in a case involving a supervisor who did

---

[5] *See also Nair v. Medline Indus., Inc.*, No. 22-CV-00331-DAD-JDP, 2023 WL 2636464 at *4 (E.D. Cal. Mar. 24, 2023) (following *Saxon* and finding the class of workers covered by the residual clause only after making key findings of fact that they directly loaded and unloaded pallets of goods onto trucks); *Valdez v. Shamrock Foods Co.*, Case No. 5:22-cv-01719-SSS-SHKx, 2023 WL 2624438 at *2 (C.D. Cal. Mar. 16, 2023) (*Saxon* and *Rittman* "read in tandem, appear to establish that transportation workers *are those workers that load* and deliver goods") (emphasis supplied).

not himself load and unload goods, the district court applied the residual clause only after expressly observing the defendant did not dispute the plaintiff's allegation that he directly managed individuals performing hands-on loading and unloading, making him "directly involved on a daily basis in the transportation of household goods across state lines." *Gabay v. Roadway Movers, Inc.*, No. 22-CV-06901 (JLR), 2023 WL 3144310, at *1 (S.D.N.Y. Apr. 28, 2023).[6]

Other than two potential anomalies of *Gabay* and *Palcko* – and at least in those two cases the workers supervised and directed those with hands-on contact of interstate goods – Menzies cannot identify, either before or after *Saxon*, any prior instance of a court applying the residual clause to workers that did not themselves have physical contact with interstate goods. *Cf. In re Grice*, 974 F.3d 950, 953 (9th Cir. 2020) (the residual clause is about what the worker does relative to the goods, not merely where the goods have been), *citing Wallace v. Grubhub Holdings, Inc.*, 970 F.3d 798, 802 (7th Cir. 2020) ("to fall within the exemption, the workers must be connected … to the goods"); *Lenz v. Yellow Transp., Inc.*, 431

---

[6] As noted *supra*, *Saxon*'s emphasis on "physically loading and unloading" goods and its suggestion in footnote two that mere supervision of individuals performing such work might not suffice raises questions about *Gabay's* conclusions. It is worth noting that the employer in *Gabay* appealed the finding that the residual clause applied on May 2, 2023, but then withdrew that appeal after the case settled in August 2023. *Saxon* also raises questions about the conclusion of *Palcko v. Airborne Express, Inc.*, 372 F.3d 588 (3rd Cir. 2004) applying the residual clause to ostensibly the same facts as those in *Gabay*, although as a pre-*Saxon* case, the Third Circuit did not have the benefit of *Saxon*'s "direct involvement" test framed through the Supreme Court's "physically loading and unloading" language.

F.3d 348, 351-52 (8th Cir. 2005) (declining to apply § 1 to a customer service representative who worked in the transportation industry but "never directly transported goods in interstate commerce," "never handled any of the packages that [the carrier] delivered" and thus "had no direct responsibility for transporting foods in interstate commerce"); *Cole v. Burns Int'l Sec. Services*, 105 F.3d 1465, 1471 (D.C. Cir. 1997) (security guards are not transportation workers); *Whitaker* 2022 WL 17405833, *4; *Holley-Gallegly*, 2022 WL 9959778, at *3. The District Court is the **<u>only</u>** court Menzies can identify applying the residual clause – before or after *Saxon* – to a class of workers that has no direct involvement with the goods either through hands-on contact (i.e., transporting the goods or loading/unloading them), or at a minimum, daily supervision and direction of the activities of those with such hands-on contact.

The District Court conceded this departure from *Saxon* and the body of residual clause caselaw when it observed "an employee who adds fuel to cargo planes is not literally moving goods" as relied upon and mandated by the *Saxon* analysis. (ER 7). For his own part, Lopez's Answering Brief offers no rebuttal to Menzies' assertions in the Opening Brief that jet fuel is not "cargo" and it is not a "good." And of course, there is no argument, either by Lopez or the District Court, that fuelers ever had any supervisory responsibility or otherwise directed the activities of workers who do have hands-on contact with interstate goods.

Consequently, while Lopez and the District Court argue Fuelers play a "necessary" role in moving goods across borders (just as mechanics and customer service representatives do), without a hands-on relationship with the goods themselves, they do not have "direct involvement" via the "physical loading and unloading" of goods as *Saxon* teaches and every other court analyzing the question has correctly understood and applied. This failure to follow *Saxon*'s test and understand its plain language – which resulted in the application of erroneous and improper tests unfaithful to *Saxon*'s requirements – requires reversal of the District Court and compelling Lopez's individual claims to mandatory arbitration.

## II. By Utilizing Both A "Temporal And Physical Proximity" And "So Clearly Related" Standard, The District Court Misunderstood *Saxon*'s Requirement Of Direct, Physical Involvement With Interstate Goods

In his Answering Brief, Lopez labors to prop up the District Court's flawed analysis by curiously denying the lower court created an inappropriate, working environment-based "physical and temporal proximity" test. Lopez further claims, like the District Court, that *Saxon* endorsed a "so closely related to interstate transportation as to be practically a part of it" test for workers who themselves have no direct involvement in the movement of interstate goods. Both these arguments avoid confronting *Saxon*'s language that instructs otherwise.

The District Court explicitly relied upon Fuelers' closeness "both physically and temporally" to manufacture their "direct involvement" with the goods and

interstate transportation, and both Lopez and the lower court improperly cite *Saxon* as permitting a "so closely related" approach to workers' involvement with the goods. Even had *Saxon* indicated the "so closely related" language bears some utility, its application would only relate to the workers' interstate versus intrastate *movements* – not their required direct involvement *with the interstate goods* themselves. Having turned to flawed analyses to apply the residual clause in a first-of-its-kind ruling, the District Court essentially conceded that application of the residual clause to Fuelers is not clearly proper, and it thus erred doing so.

### A. The District Court's Language Makes Plain It Adopted An Improper "Temporal And Physical Proximity" Analysis

Lopez denies in his Answering Brief that the District Court created and applied a "physical and temporal proximity to the interstate movement of goods" test, basing such an assertion on the contention the District Court purportedly never used such language.[7] The District Court's language clearly belies this contention:

> Although an employee who adds fuel to cargo planes is not literally moving goods (as the plaintiffs in *Saxon* and *Rittman* did), he is **closer both physically and temporally** to the actual movement of goods between states than a truck mechanic who works on trucks that move goods in interstate commerce. (ER 7, bolded and underlined emphasis supplied).

---

[7] In its Opening Brief, Menzies used the expression "physical and temporal proximity to the interstate movement of goods" within quotation marks to label to the analytical test used by the District Court – not as a direct quotation.

By simultaneously acknowledging Fuelers do not themselves move goods yet explicitly using their physical and temporal closeness – in other words, their physical and temporal proximity – to the goods to qualify them as transportation workers, the District Court absolutely fashioned a "physical and temporal proximity to the interstate movement of goods" analysis at odds with *Saxon*'s demand that transportation works be "directly involved in transporting goods." 142 S. Ct. at 1788-89. The District Court's differentiating the work of Fuelers from mechanics (presumably working in a shop) reinforces how much it relied, inappropriately so, upon the mere fact that Fuelers perform their work in the same vicinity as ramp agents who in fact physically load and unload cargo. *Cf. In re Grice*, 974 F.3d at 953 (the residual clause is about what the worker does relative to the goods, not merely where the goods are).

Nothing in *Saxon* supports a conclusion that merely working alongside actual transportation workers constitutes "direct involvement in transporting goods." Rather as explained *supra*, *Saxon* emphasizes physically loading and unloading the goods – in other words, having a hands-on relationship with goods that Fuelers lack. The block-quoted language above makes plain Fuelers' working environment – not their work – was critical to the District Court, particularly coming immediately following the admission that Fuelers do not themselves move goods. (ER 7). Lopez's denial of how the District Court analyzed the residual

14

clause does not square with the lower court's language, and the District Court's decision to create such a test is but one of several analytical errors it committed.

**B.** **"So Closely Related" Is Not Part Of The *Saxon* Analysis And Even If It Were, The District Court Erred Applying It To Direct Involvement With Goods As Opposed To Interstate Movement**

Having found it could use a worker's physical and temporal proximity to interstate goods as entrée to the required "direct involvement in transporting goods," the District Court claimed the work of Fuelers is "so closely related to interstate transportation as to be practically part of it," citing as the basis for this analytical standard. For his part, Lopez also argues *Saxon* adopted a "so closely related" test as part of the "direct involvement in transporting goods" mandate, and his Answering Brief repeatedly depends on this supposed test for many of its contentions. Both the District Court and Lopez are wrong. *Saxon*'s one-time reference to the Supreme Court's prior invocation of "so closely related" language is a far cry from making it part of the "direct involvement" requirement. And even were it appropriate to analyze the residual clause's scope with such language, it only applies to workers' *movements*, not their relationship with interstate goods.

**1.** **Nothing In *Saxon* Supports Adopting A "So Closely Related" Mechanism To Establish "Direct Involvement"**

As *amicus curiae* Airlines 4 America corrected pointed out in its brief, *Saxon* does <u>not</u> endorse a "so closely related" standard as part of the "direct

involvement in transporting goods" analysis. For starters, both Lopez's repeated references in his Answering Brief and the District Court's direct citation to *Saxon* for the quotation of the "so closely related to interstate transportation as to be practically a part of it" is not a faithful and complete representation of *Saxon*'s language and meaning. Indeed, that language only occurs once in the *Saxon* opinion, and <u>not</u> in a context of using it to assess how to analyze the "direct involvement in transporting goods" requirement:

> Thus, any class of workers directly involved in transporting goods across state and international borders falls within § 1's exemption.
>
> Airplane cargo loaders are such a class. We have said before that it is "too plain to require discussion that the loading or unloading of an interstate shipment by the employees of a carrier is so closely related to interstate transportation as to be practically part of it." *Baltimore & Ohio Southwestern R. Co. v. Burtch*, 263 U.S. 540, 544, 44 S. Ct. 165, 68 L. Ed. 433 (1924). We think it equally plain that airline employees who physically load and unload cargo on and off planes traveling in interstate commerce are, as a practical matter, part of the interstate transportation of goods." 142 S. Ct. at 1788-89.

This language establishes several important things. First, it is not accurate for either the District Court or Lopez to quote *Saxon* as the source of a purported "so closely related" analysis, as *Saxon* merely referenced a century-old decision for something the Supreme Court had previously remarked – not as a guidepost applicable to its holding. Second, nothing in this language suggests the Supreme Court endorsed a "so closely related" approach as a mechanism to analyze the required "direct involvement" with the goods themselves – particularly when

16

considered against the Supreme Court's repeated emphasis on the actual physical loading and unloading of goods by the class of workers under consideration. Third and perhaps most importantly, even if *Saxon* does suggest a "so closely related" approach might be appropriate to assessing the "direct involvement in transporting goods across state or international borders" requirement, the context of the passage and other court decisions also invoking that language make plain it would only apply relative to considering the "across state and international borders" part of the analysis – not the "directly involved in transporting goods" aspect.[8]

### 2. Even If "So Closely Related" Were A Viable Analytical Approach, It Only Applies To Workers' Movements – Not The Required "Direct Involvement" With Goods

The workers in both *Saxon* and *Burtch* indisputably had direct, hands-on involvement with the interstate goods – such that the real question pertained to whether they could be interstate transportation workers even if they did not cross state lines while performing their work. Indeed, prior to *Saxon*, courts considering such "so closely related" language in residual clause cases have done so with respect to the workers' movement or non-movement across state lines – <u>not their</u>

_____

[8] *Saxon*'s statements in the two footnotes drive this point home – where the answer gets potentially murky is either where the class of workers at issue does not themselves handle the goods (such as supervisors) or the degree of interstate movement the workers themselves have. As noted above, there is no ambiguity about a class of workers' "direct involvement with goods" when they have a frequent, hands-on relationship with the interstate goods, and thus no reason why a "so closely related" approach would be helpful or necessary.

direct involvement with the goods themselves. *See*, *e.g.*, *Rittman*, 971 F.3d at 913 (rejecting the notion that the residual clause only covers workers whose work causes them to cross state lines); *Waithaka*, 966 F.3d at 20-21 (evoking the "so closely related" language to reject the contention that workers must cross state lines to qualify as transportation workers); *Palcko*, 372 F.3d at 593 (citing the "so closely related" language while rejecting the premise that a supervisor was not transportation worker because he did not himself carry goods across state lines). And even though *Saxon* did not adopt this "so closely related" language, the decisions continuing to consider that language post-*Saxon* do so only in assessing the importance of whether workers themselves cross state lines – not with respect to their relationship to the goods themselves. *Singh v. Uber Tech., Inc.*, 67 F.4th 550, 558 (3rd Cir. 2023) ("A class of workers that does not regularly cross state lines will qualify if their work is 'so closely related' to interstate commerce 'as to be in practical effect part of it'") (internal citations omitted).

Consequently, even if *Saxon*'s quoting of *Burch*'s language implicitly allows for a "so closely related" approach, it must pertain to the impact of the workers' *movements*, not the workers' relationship with the goods. As explored *supra*, *Saxon* teaches that a class of workers' physical involvement with the goods themselves is necessary for application of the residual clause, and only once established do the workers' interstate and intrastate movements become relevant.

18

Menzies, Lopez and the District Court are all in agreement that Fuelers are "not literally moving goods," making a "so closely related" analysis of their physical and temporal proximity to the movement of the goods inappropriate. The District Court should not have relied upon that non-existent standard and Lopez is wrong to argue *Saxon* adopted it vis-à-vis the workers' relationship with the goods.

### C. By Adopting Two Inapplicable Tests, The District Court Made Clear Fuelers Are Not "Clearly Covered" By § 1 And Erred

The District Court's opinion, even as it noted several general principles regarding interpretation of the FAA, curiously neglected to observe the FAA's liberal policy favoring arbitration, which mandates that "the § 1 exclusion provision be afforded a narrow construction." *Circuit City,* 532 U.S. at 114-15. The District Court thus could only have properly found § 1 covers Fuelers if it concluded the residual clause "clearly exempts" that class of workers from the FAA's coverage. *Lopez v. Cintas Corp.*, 47 F.4th 428, 431 (5th Cir. 2022), *citing Epic Sys. Corp. v. Lewis*, 584 U.S. ___, 138 S. Ct. 1612, 1621 (2018).

The District Court's wording and approach leaves little question it could not and did not conclude the residual clause "clearly exempts" Fuelers. If the question were clear, the District Court would have had no need to fashion an erroneous "closer physically and temporally to the actual movement of goods" analysis. It would have had no occasion to claim *Saxon* endorsed a "so closely related to

interstate transportation as to be practically part of it" test, and no occasion to apply "similar logic" from a 50+ year-old Fifth Circuit decision interpreting the Fair Labor Standards Act ("FLSA") and its remedial logic to interpretation of FAA provisions demanding narrow construction. By taking such a back door path to reach the outcome it did, the District Court essentially acknowledged that application of the residual clause to Fuelers was far from clear. That lack of clarity should have caused the District Court to compel arbitration. *Lopez*, 47 F.4th at 431, *citing Epic Sys. Corp.*, 138 S. Ct. at 1621.

### III. Lopez's Expansive Interpretations Of "Transportation Worker" Drawn From Remedial Statutes And Reliance On Railroad Employee Cases Have No Place Here And Cannot Square With *Saxon*'s Plain Language

Lopez's Answering Brief devotes pages of attention to arguments suggesting this Court should superimpose on the residual clause various interpretations of "transportation worker" doctrines from other federal statutes such as the FLSA, the Federal Employers Liability Act ("FELA"), and the Clayton Antitrust Act. In similar fashion, Lopez cites multiple FELA cases involving railroad employees working with the instrumentalities of transportation (several of which are over a century old) to argue this Court can and should apply the logic of those railroad employee FELA cases to how the FAA's residual clause, as very recently interpreted by *Saxon*, should apply to Fuelers. These various arguments,

long in page and word count but lacking in merit, cannot square with the FAA and

its policy and purpose, the language of § 1, and with *Saxon*.

    **A.    Interpretations Of "Interstate Commerce" Principles Drawn From Remedial Statutes Are Improper In A Residual Clause Case**

The District Court relied significantly upon *Wirtz v. B. B. Saxon Co.*, 365

F.2d 457 (5th Cir. 1966), and Lopez suggests in his Opening Brief that *Wirtz* is

effectively outcome determinative here. But in making that argument, Lopez

essentially ignores what Menzies already pointed out – *Wirtz* is an FLSA case, not

an FAA case. Lopez's reliance on other FLSA cases, as well as FELA and Clayton

Act case, all suffer this same fundamental flaw.

    While each of these federal statutes generally invokes the concept of

"interstate commerce," they all have a significantly different purpose than the FAA

and courts have routinely instructed that interstate commerce under the FLSA,

FELA and the Clayton Act must be given broad meaning. *See, e.g., Walling v.*

*Jacksonville Paper Co.*, 317 U.S. 564, 567-68 (1943) ("It is clear that the purpose

of the [FLSA] was to extend federal control in this field throughout the farthest

reaches of the channels of interstate commerce"); *see also* 29 CFR § 776.1

(describing FLSA's "broad remedial purposes"); *Atchison, Topeka & Santa Fe Ry.*

*Co. v. Buell*, 480 U.S. 557, 561-62 (1987) (FELA is a remedial statute); *Pfizer Inc.*

*v. India*, 434 U.S. 308, 313 (1978) (noting the Clayton Act's "expansive remedial

purpose"). The concept of "interstate commerce" for purposes of the residual clause is far more circumscribed. *Saxon*, 142 S. Ct. at 1789. Consequently, turning to the FLSA's, FELA's and the Clayton Act's broad purposes and cases considering whether workers in the transportation industry qualify as transportation workers under those remedial statutes is a much different proposition than understanding what workers qualify as transportation workers under § 1 of the FAA and its demand for narrow construction. *Circuit City,* 532 U.S. at 114-15. This is particularly so given *Saxon* has just emphasized the need for "direct involvement" and "active engagement" in moving interstate goods.

Using caselaw analyzing statutes with vastly different purposes to make sweeping contentions about how to understand the residual clause, which demands narrow construction, is a dubious proposition at best. And even as some courts have looked to prior FELA decisions to evaluate residual clause questions, that has also occurred in the context of evaluating how to assess § 1 for workers only involved in an intrastate leg of interstate goods' movement. *See*, *e.g.*, *Rittmann*, 971 F.3d at 911 (citing *Waithaka*, 966 F.3d at 22 to note the "phrase 'engaged in interstate commerce,' as understood at the time of the FAA's passage, was not limited to those transportation workers who themselves crossed state lines"). The fact that Fuelers never cross state lines is not a relevant issue in this appeal – whether they have "direct involvement" in the interstate transportation of goods

<u>despite having no direct connection to the goods is</u>. That question requires interpretation of *Saxon*'s language and § 1, both of which call for narrow construction. *Circuit City,* 532 U.S. at 114-15. Cases applying "remedial logic" under the FLSA, FELA and the Clayton Act thus have no utility in this matter.

**B. Lopez's Reliance On FELA Railroad Employee Cases To Interpret The Residual Clause Is Misplaced Because Railroad Workers Are An Enumerated Category Explicitly Covered By § 1**

Just as Lopez's reliance on the FLSA, FELA and Clayton Act to argue for an expansive interpretation of the residual clause as applied to Fuelers is misplaced, so too is his contention that centuries-old FELA cases addressing railroad workers dictate the outcome here. Relying on centuries-old personal injury FELA cases involving railroad workers suffers from a fundamental problem: railroad workers <u>are already a separately enumerated category of covered workers under FAA § 1 independent of their relationship to foreign or interstate commerce</u>.

As this Circuit has recently pointed out, the specifically enumerated category of "railroad employees" is not part of the residual clause. *Capriole v. Uber Tech., Inc.*, 7 F.4th 854, 861 (9th Cir. 2021); *see also Wallace*, 970 F.3d at 799-800. Consequently, the FAA's statutory language at least clearly suggests, if not outright directs, that railroad employees are exempted from arbitration under the § 1 independent of their relationship to and engagement in foreign or interstate commerce. *See Saxon*, 142 S. Ct. at 1791-92 (rejecting the argument that § 1's

23

"railroad employees" language is limited to only those railroad workers physically onboard a train crossing state lines).  In all the FELA cases proffered by Lopez to argue Fuelers are akin to railroad employees, those decisions required assessment of the workers' involvement in interstate commerce under a remedial statute that did not specifically enumerate railroad employees as a covered category.

If § 1 had not enumerated "railroad workers" as covered independent of their connection to interstate commerce, perhaps Lopez might have some logical basis to analogize FELA interpretations to interpretation of the residual clause in light of *Saxon*.  But that is not the case, and using century-old decisions under a statute requiring broad interpretation that does not enumerate "railroad workers" as mechanism to engage in the required narrow construction of § 1 immediately after it enumerates "railroad workers" is a logical leap too far for Lopez to make.

### C. *Saxon*'s Language Leaves No Space For Broad Interpretation Of The Residual Clause's Transportation Worker Exemption

Rather than relying on remedial statutes and decades- and centuries-old decisions for how to apply the logic of *Saxon* to Fuelers, the District Court and Lopez need only look to *Saxon*'s language itself to confirm the Supreme Court intended lower courts to follow a narrow interpretation of the "transportation worker" exemption.  Once again, the Supreme Court's specific words matter: transportation workers must be "*directly* involved in transporting goods across

24

state or international lines." *Id*. at 1789 (emphasis supplied). So used, "direct involvement" is a limiting phrase, and placed in the larger context of the opinion, the Supreme Court clearly intended it to have a narrow, focused meaning. As noted above, the term "directly" means "in immediate physical contact" and that is precisely how *Saxon* applied it, repeatedly speaking of the importance of workers "physically loading and unloading cargo." The Court then rejected arguments both for an industry-wide approach and a "workers must themselves cross state lines" understanding of the meaning of "transportation workers" – driving the focus back to workers' direct involvement and actual participation in loading and unloading the goods. *Id*. at 1791-92. Within these contours, the Supreme Court at a minimum acknowledged the possibility that mere supervision of such workers without direct involvement in the form of physically moving the goods might not suffice to become a transportation worker. *Id*. at 1789.

All this language belies Lopez's arguments that this Circuit should rely on authority arising from remedial statutes to uphold the District Court's expansive application of "transportation worker" relative to Fuelers. The District Court erred in relying on FLSA authority and "the logic of *Wirtz*" to find Fuelers, having no physical involvement with goods and thus no <u>direct</u> involvement in their interstate transportation, covered by the residual clause merely because they work in the same environment as workers who do have such direct involvement and because

the instrumentality of their work – jet fuel – is necessary so an aircraft can travel. Indeed, the District Court's opinion is a clear outlier and the **only** known decision to apply the residual clause to a class of workers that have **no** responsibilities relating to the physical loading and unloading of goods and/or the direct supervision of such work. Consistent with *Saxon*'s clear instructions and the many courts before and after *Saxon* that have recognized the fundamental importance of the direct involvement (*i.e.* the hands-on, physical handling of interstate goods), this Circuit should correct that clear error, reverse the District Court's erroneous decision, and send Lopez's individual claims to arbitration.

## **CONCLUSION**

For all the reasons advanced both in Menzies' Opening Brief and those reiterated in this Reply, as well as the reasons helpfully advanced by *amicus curiae* Airlines 4 America, the final order of the District Court denying Menzies' Motion should be vacated, and the case remanded with instructions to grant the Motion and order this matter to arbitration where it belongs.

Date: October 19, 2023                 FOLEY & LARDNER LLP


                                        */s/ Christopher Ward*
                                        Christopher Ward
                                        Kevin Jackson

                                        *Attorneys for Appellants Aircraft Service*
                                        *International, Inc. and Menzies Aviation*
                                        *(USA), Inc.*

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

## Form 8. Certificate of Compliance for Briefs

**9th Cir. Case Number: 23-55015**

I am the attorney or self-represented party.

**This brief contains 6,890 words,** including words manually counted in any visual images, and excluding the items exempted by FRAP 32(f). The brief's type size and typeface comply with FRAP 32(a)(5) and (6).

I certify that this brief *(select only one)*:

[X] complies with the word limit of Cir. R. 32-1.

[ ] is a **cross-appeal** brief and complies with the word limit of Cir. R. 28.1-1.

[ ] is an **amicus** brief and complies with the word limit of FRAP 29(a)(5), Cir. R. 29-2(c)(2), or Cir. R. 29-2(c)(3).

[ ] is for a **death penalty** case and complies with the word limit of Cir. R. 32-4.

[ ] complies with the longer length limit permitted by Cir. R. 32-2(b) because *(select only one)*:
> [ ] it is a joint brief submitted by separately represented parties;
> [ ] a party or parties are filing a single brief in response to multiple briefs; or
> [ ] a party or parties are filing a single brief in response to a longer joint brief.

[ ] complies with the length limit designated by court order dated _____.

[ ] is accompanied by a motion to file a longer brief pursuant to Cir. R. 32-2(a).

**Signature** /s/ Christopher Ward          **Date** October 19, 2023

1

## **CERTIFICATE OF SERVICE**

**9th Cir. Case Number: 23-55015**

I hereby certify that I electronically filed the foregoing/attached document(s) on this date with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit using the Appellate Electronic Filing system. Service on Case Participants Who Are Registered for Electronic Filing:

| | |
|---|---|
| Matthew Warren Gordon | ***Attorneys for Plaintiff-Appellee, Danny*** |
| Matthew J. Matern | ***Lopez*** |
| Max Neal Sloves | |
| Matern Law Group, PC | Tel: (310) 531-1900 |
| 1230 Rosecrans Ave., Suite 200 | E-mail: *mgordon@maternlawgroup.com* |
| Manhattan Beach, CA 90266 | E-mail: *mmatern@maternlawgroup.com* |
| | E-mail: *msloves@maternlawgroup.com* |

Description of Document(s) (required for all documents):

**Appellants' Opening Brief**.

**Signature** /s/ Christopher Ward          **Date:** October 19, 2023

2