**Case No. 23-55015**

---

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT

---

DANNY LOPEZ, individually, and on behalf of all other aggrieved employees

*Plaintiff-Appellee*,

v.

AIRCRAFT SERVICE INTERNATIONAL, INC., a corporation and MENZIES AVIATION (USA), INC., a corporation

*Defendants-Appellants*.

On Appeal from the United States District Court
for the Central District of California
No. 2:21-cv-07108-DMG-E
Hon. Dolly M. Gee

---

## PETITION FOR REHEARING EN BANC

---

Christopher Ward (SBN 238777)
**FOLEY & LARDNER LLP**
555 S. Flower Street, Suite 3300
Los Angeles, CA 90071-2418
Telephone: (213) 972-4500
E-mail: cward@foley.com

Kevin Jackson (SBN 278169)
**FOLEY & LARDNER LLP**
11988 El Camino Real, Suite 400
San Diego, CA 92130-2594
Telephone: (858) 847-6700
E-mail: kjackson@foley.com

*Attorneys for Defendants-Appellants*
Aircraft Service International, Inc. and Menzies Aviation (USA), Inc.

## **TABLE OF CONTENTS**

FRAP 35(b)/CIRCUIT RULE 35-1 STATEMENT OF COUNSEL ........................1

INTRODUCTION .........................................................................................3

*ORTIZ*'S ANALYSIS OF AND ADHERENCE TO *SAXON* ..................................5

PROCEDURAL BACKGROUND AND THE OPINION'S ANALYSIS ..............7

    I.    The District Court Applied The § 1 Exception Through A Hybrid "So Closely Related" And "Proximity" Analysis ................................7

    II.    Menzies Supplied The Panel With All Relevant Authority.................8

    III.    Relying On *Rittman*'s Analysis Applicable To Workers' Movements, The Panel Affirmed Because Lopez's Work Is A "Vital Component" Of Interstate Vehicle Movement ..........................................................9

ARGUMENT ..............................................................................................11

    I.    Rehearing Is Necessary To Secure Uniformity Of This Circuit's Decisions Because The Opinion Conflicts With *Ortiz* .......................11

    II.    This Case Involves An Issue Of Exceptional Importance Because No Court Has Ever Before Applied The "Narrow" § 1 Exemption To Workers Who Do Not Directly Move Interstate Goods ....................13

    III.    The Opinion Conflicts With Supreme Court And This Circuit's Authority And Substantially Affects A Rule Of National Application In Need Of National Uniformity ........................................................15

CONCLUSION ...........................................................................................18

4887-1297-1141.6

# TABLE OF AUTHORITIES

Page(s)

## Cases

*Bissonnette v. LePage Bakeries Park St., LLC,*
   601 U.S. 246 (2024)....................................................................... 2, 4, 5, 9

*Circuit City Stores, Inc. v. Adams,*
   532 U.S. 105 (2001)................................................................................2

*Fraga v. Premium Retail Serv., Inc.,*
   61 F.4th 228 (1st Cir. 2023)............................................................. 4, 8, 13

*Gabay v. Roadway Movers, Inc.*
No. 22-CV-06901 (JLR), 2023 WL 3144310 (S.D.N.Y Apr. 28, 2023).................15

*Fraga v. Premium Retail Serv., Inc.*
-- F. Supp. 3d --, No. 21-10751-WGY, 2023 WL 8435180 (D. Mass. Dec. 5, 2023)
   .................................................................................................. 4, 8, 13

*Hamrick v. Partsfleet, LLC,*
   1 F.4th 1337 (11th Cir. 2021) .................................................................14

*Holley-Gallegly v. TA Operating, LLC,*
   No. 22-EDCV-593 JBG, 2022 WL 9959778 (C.D. Cal. Sept. 16, 2022) ...........16

*Lopez v. Cintas Corp.,*
   47 F.4th 428 (5th Cir. 2022) ...................................................................14

*Ortiz v. Randstad Inhouse Servs., LLC,*
   95 F.4th 1152 (9th Cir. 2024) ........................................................... passim

*Palcko v. Airborne Express, Inc.,*
   372 F.3d 588 (3rd Cir. 2004) ..................................................................15

*Rittman v. Amazon.com, Inc.,*
   971 F.3d 904 (9th Cir. 2020) .................................................................4, 10

ii

*Southwest Airlines Co. v. Saxon*,
  596 U.S. 450 (2022) .............................................................. 2, 4, 5, 10

*Whitaker v. Enbridge (U.S.), Inc.*,
  644 F. Supp. 3d 355 (S.D. Tex. 2022) ..............................................16

## **Rules**

Fed. R. App. 35 .........................................................................5

Defendants-Appellants Aircraft Service International, Inc. and Menzies Aviation (USA), Inc. (collectively "Menzies") petition for rehearing en banc of the July 19, 2024 Opinion (the "Opinion," Dkt. 56-1) published by the panel.

## FRAP 35(B)/CIRCUIT RULE 35-1 STATEMENT OF COUNSEL

In counsel for Menzies' judgment, en banc consideration is necessary for all the following reasons:

(i)     to secure or maintain uniformity of this Court's decisions;

(ii)    this proceeding involves a question of exceptional importance; and

(iii)   the Opinion conflicts with an existing opinion of this Circuit and opinions of the Supreme Court and substantially affects a rule of national application in which there is a need for national uniformity.

The Opinion's analysis and conclusions are inconsistent with *Ortiz v. Randstad Inhouse Servs., LLC*, 95 F.4th 1152 (9th Cir. 2024), and the Opinion makes no effort to align its conclusions with *Ortiz*. En banc review is necessary to resolve the conflicting decisions to secure uniformity.

This proceeding also involves a question of exceptional national importance that has spawned litigation following *Southwest Airlines Co. v. Saxon*, 596 U.S. 450 (2022): specifically, how courts should apply the Federal Arbitration Act's ("FAA") §1 residual clause exemption to workers who never move goods during their interstate journey. Until this case, no court has ever applied the residual

1

clause exemption to workers who do not move interstate goods, or at a minimum, do not directly supervise such workers, making this first-ever result exceptionally important to the federal courts' collective transportation worker analysis.

Additionally, the Opinion conflicts with an opinion of this Circuit (*Ortiz*) and with Supreme Court precedent requiring the "§1 exclusion provision be afforded a narrow construction," *Circuit City Stores, Inc. v. Adams*, 532 U.S. 105, 118 (2001), and that courts do so to avoid breeding "litigation from a statute that seeks to avoid it." *Bissonnette v. LePage Bakeries Park St., LLC,* 601 U.S. 246, 254 (2024)*.* The Opinion also does not properly apply the analysis directed by *Saxon* and violates *Circuit City*'s narrow construction demand[1], thus fostering, not reducing, litigation in derogation of *Bissonnette*. The transportation worker exemption is a national rule, and upholding a finding departing from precedent will substantially affect how courts consider that rule going forward. Particularly with the increase in transportation worker litigation after *Saxon*, national uniformity on this issue is critically important.

---

[1] Legal commentary has described the Opinion as "broadening" and "expanding" the transportation worker exemption. *See, e.g., Ninth Circuit Continues to Expand Transportation Worker Exemption Under Federal Arbitration Act*, July 24, 2024, (https://www.jacksonlewis.com/insights/ninth-circuit-continues-expand-transportation-worker-exemption-under-federal-arbitration-act); *Ninth Circuit Broadly Applies The FAA's Transportation Worker Exemption To Fueling Technicians To Green Light Their Class Action And Side-Step Arbitration*, July 24, 2024 (https://blogs.duanemorris.com/classactiondefense/2024/07/23/ninth-circuit-broadly-applies-the-faas-transportation-worker-exemption-to-fueling-technicians-to-green-light-their-class-action-and-side-step-arbitration/).

## INTRODUCTION

This proceeding poses a question of exceptional importance that is currently the focus of much litigation following *Saxon*: how courts should analyze and apply the transportation worker exception to workers who never move goods during their interstate journey. *Ortiz*'s analysis reflecting on that question aligns with *Saxon*. The Opinion does the opposite, opening a rift in this Circuit on a question of exceptional national importance that this Court should close to secure uniformity and adherence to precedent.

The Opinion is this Circuit's second significant decision after *Saxon*, which outlines a framework through its language for analyzing the transportation worker exemption emphasizing fundamental and practical concepts: (1) the individual must have "direct," "physical" involvement with movement of interstate goods[2]; and (2) only those who have "active" and "frequent" involvement in that "direct, physical" movement of the goods as part of their interstate journey fall within the

---

[2] Menzies has likened this analysis to a practical understanding that transportation workers have "hands on" contact with interstate goods. Menzies has never contended *Saxon* creates an actual "hands on" test, but the fact remains that this colloquial understanding is practical, easy to apply and consistent with *Saxon*'s repeated invocation of "direct" and "physical" contact with interstate goods. As Menzies pointed out in its briefing, Merriam Webster defines "direct" to mean "in immediate physical contact" and "physically" to mean "in respect to the body." *Saxon*'s use of these terms emphasizes actually handling interstate goods. Additionally, with *Bissonnette* recently emphasizing the importance of avoiding "litigation from a statute that seeks to avoid it," 601 U.S. at 254, a "hands-on" approach, which *Ortiz* effectively applied, is a practical way to follow *Saxon*.

3

narrow exemption.  *Saxon*, 596 U.S. at 455-58.  While not explicitly answering whether workers who never handle goods can qualify as transportation workers, *Saxon* repeatedly emphasizes the words "direct," "active," "physical" and "frequent" to describe the necessary involvement in the movement of the goods – a conclusion the *Saxon* reinforces by at least suggesting mere supervision of such workers might not be enough.  *Id*. at 456-57, n.1-2.

Ignoring this language and the analysis by *Ortiz* focused on *Saxon*'s "bottom line," the Opinion instead upholds the <u>first and only decision</u> applying the transportation worker exception to workers that <u>do not move interstate goods</u> and/or do not supervise such workers.  The Opinion's analysis – relying on *Rittman v. Amazon.com, Inc.*, 971 F.3d 904 (9th Cir. 2020) treating a different, inapposite question – expansively construes the residual clause in violation of *Circuit City*.  And its analysis – lacking practical guidelines for other courts to follow – contradicts that of *Ortiz*, creates inconsistency, and will "breed litigation from a statute that seeks to avoid it" in derogation of *Bissonnette*.   601 U.S. at 254.  At a national level, the Opinion conflicts with the First Circuit's analysis in *Fraga v. Premium Retail Serv., Inc.*, 61 F.4th 228 (1st Cir. 2023) and the District of Massachusetts' subsequent application in *Fraga v. Premium Retail Serv., Inc.*, -- F. Supp. 3d --, No. 21-10751-WGY, 2023 WL 8435180 (D. Mass. Dec. 5, 2023), where both decisions turned on the frequency of workers' handling goods and thus

support the principle that "direct handling" is the "central feature of a transportation worker." *See Saxon*, 596 U.S. at 459.

En banc rehearing is thus necessary for all the reasons set forth in Fed. R. App. 35 and Circuit Rule 35-1. It will promote uniformity in this Circuit's decisions and may help the Supreme Court evaluate whether this matter warrants consideration in the event of a subsequent petition for certiorari. Even if the Court is inclined to preserve the panel's expansion of the transportation worker exemption, the full Circuit should give a careful analysis and show how the Opinion squares with *Circuit City*, *Saxon*, *Bissonnette* and *Ortiz* so district courts can reach consistent results on future fact patterns.

## *ORTIZ*'S ANALYSIS OF AND ADHERENCE TO *SAXON*

On March 12, 2024, another panel of this Circuit issued *Ortiz*, applying the transportation worker exemption to workers who only physically moved interstate goods over small distances inside a warehouse. 95 F.4th at 1163. Even though Ortiz "fulfilled an admittedly small" role in the goods' movement, *Ortiz* found that small role "direct and necessary" and applied the exemption. *Id*. at 1162.

Central to *Ortiz*'s analysis was the fact that the workers physically handled and moved the goods. *Id*. at 1160, 1162-63 ("*Saxon*'s bottom line is that … an employee's relationship to the movement of the goods must be sufficiently close enough … that his work plays a tangible and meaningful role in their progress

5

through … interstate commerce") ("Ortiz *handled* Adidas products near the very heart of their supply chain") (the relevant goods were still moving in interstate commerce *when the employee interacted with them*") ("Saxon *handled goods* as they journeyed from terminal to plane, plane to plane, or plane to terminal, while Ortiz *handled them* as they went through the process of entering, temporarily occupying, and subsequently leaving the warehouse") ("The basic fact that Saxon moved the bags across only a small distance does not change that *she moved the baggage as part of its interstate travel*") ("Though Ortiz moved goods only a short distance … *he nevertheless moved them*. And not only did he move them, he did so with the direct purpose of facilitating their continued travel") (emphasis supplied in all parenthetical quotations). *Ortiz* also distinguished cases where courts found an insufficiently close connection to interstate commerce because in those cases "the employee's job description was much further removed *from physically handling goods* than Ortiz was here." *Id*. at 1163 (emphasis supplied).

*Ortiz* also explicitly rejected the argument that focusing on the goods is improper – meaning transportation worker application should start from the perspective of who moves the goods, not from being "vital" to their interstate movement. *Id*. at 1164 ("*Saxon* did not improperly shift its focus away from Saxon's work by accounting for the *inescapable fact that her job required her to handle goods* … Rather, the Court could only understand the extent to which

6

Saxon contributed to the interstate commerce of baggage after it understood that Saxon's job … *involved handling bags as they traveled interstate*") (emphasis supplied).  Put simply, after acknowledging that employees "who do not transport products across great distances and interact with interstate commerce on a purely local basis present[s] a particularly difficult interpretative issue," *id*. at 1159, *Ortiz* reconciled that issue with *Saxon* by virtue of the plaintiff's physical handling of goods as emphasized by the many examples of language quoted above.

## PROCEDURAL BACKGROUND AND THE OPINION'S ANALYSIS

On July 21, 2021, Lopez commenced this matter by filing an unverified Complaint in the Superior Court of California, County of Los Angeles.  (ER 149). Menzies removed this action to the United States District Court for the Central District of California on September 2, 2021.  (ER 71).

I. **The District Court Applied The § 1 Exception Through A Hybrid "So Closely Related" And "Proximity" Analysis**

On July 14, 2022, Menzies moved to compel arbitration seeking to enforce Lopez's agreement to arbitrate on an individual basis the claims asserted in the Complaint.  (ER 44-45).  Lopez opposed on several grounds, but only one is relevant here – whether he qualifies as an exempt transportation worker.  (ER 25, 31-33).  Lopez asserted that because he "physically added fuel to both passenger and cargo airplanes involved in both foreign and domestic interstate travel," he is

7

exempt from the FAA. (ER 32). What Lopez <u>did not assert</u> is that he participated in any way in the loading of "cargo," passenger baggage or goods. (ER 32, 43).

The District Court acknowledged that "an employee who adds fuel to cargo planes is not literally moving goods." (ER 7). Having made this concession, it nevertheless denied the Motion, concluding that because Lopez's work occurred in "physical and temporal proximity to the interstate movement of goods," adding fuel to an airplane is "so closely related to interstate transportation as to be practically a part of it." (ER 7). In other words, the District Court focused not on whether Lopez had a direct relationship with the goods, but rather on the environment where he performed his duties and the fact that an interstate vehicle cannot transport goods without fuel. (ER 7).

## II.   Menzies Supplied The Panel With All Relevant Authority

In its briefing, Menzies provided a detailed analysis of *Saxon*, and cited *Circuit City*'s instruction that courts construe the residual clause narrowly. After principal briefing closed, Menzies filed a notice of supplemental authority on December 6, 2023 identifying the District of Massachusetts' finding in *Fraga* that even though the employee did move interstate goods, she did not do so with sufficient frequency to qualify for the transportation worker exemption. *See Fraga*, 2023 WL 8435180, at *5.

8

After oral argument on January 8, 2024, Menzies filed two more such notices on March 13, 2024 and April 16, 2024. The former addressed *Ortiz's* analysis focused on handling goods, and the latter emphasized *Bissonnette's* instruction to avoid interpretative tests for the transportation worker exemption that foster, not abate, more litigation. *See Bissonnette*, 601 U.S. at 254. The panel thus had all the authority the Opinion did not follow and with which it conflicts.

## III.   Relying On *Rittman*'s Analysis Applicable To Workers' Movements, The Panel Affirmed Because Lopez's Work Is A "Vital Component" Of Interstate Vehicle Movement

The panel published the Opinion, containing 14 substantive pages, on July 19, 2024. It devoted ten pages to the facts, procedural history and discussion of *Rittman*, a pre-*Saxon* decision considering whether workers who did handle interstate goods but did not transport them across state lines qualified as transportation workers. *See* 971 F.3d at 907. The questions resolved by *Rittman* and its underlying analysis have never been at issue here. Rather, what has always mattered in this case "is not the worker's geography but his work's connection with – and relevance to – the interstate flow of goods." *Ortiz*, 95 F.4th at 1162.

Nevertheless, the panel explicitly relied on *Rittman* to find fuelers are transportation workers because their work is "a vital component to [a plane's] ability to engage in the interstate and foreign transportation of goods." *See* Opinion, p. 12. The panel rejected Menzies' suggestion that *Saxon* is best

9

understood via focus on workers' physical relationship to interstate goods without offering other practical guidelines to apply the Opinion's reasoning.[3]  It then claimed *Saxon* indicates that "workers may be exempt from the FAA even 'when the class of workers carries out duties further removed from the channels of interstate commerce." *Id*., p. 13.  However, in suggesting *Saxon* supports an expansive interpretation, the panel ignored the full language of its footnote, which suggests not expansion but constriction where application of the transportation worker exception is not obvious.  *See Saxon*, 596 U.S at 457 n.2 ("We recognize that the answer will not always be so plain when the class of workers carries out duties further removed from the channels of interstate commerce or the actual crossing of borders").  The Opinion also gave no analysis nor squared its conclusions against *Ortiz*, citing to it only for its observation that warehouse workers "fulfilled an admittedly small but nevertheless direct and necessary role in the interstate commerce of goods" – <u>a conclusion *Ortiz* reached based on its repeated recognition that the workers moved the goods</u>.  95 4th at 1163 ("Though Ortiz moved goods only a short distance across the warehouse floor … *he nevertheless moved them*") (emphasis supplied).

_____

[3] If anything, the panel acknowledged the Opinion will make it harder for courts to determine what constitutes "direct and necessary involvement," faulting *Circuit City*'s language through the *Rittman* opinion analyzing a different issue (the worker's geographic movements).  *See* Opinion, p. 13 n.6.

10

**ARGUMENT**

**I.**      **Rehearing Is Necessary To Secure Uniformity Of This Circuit's Decisions Because The Opinion Conflicts With *Ortiz***

The panel's endorsement of a first-ever application of the transportation worker exemption to workers who never move the goods nor supervise those who do conflicts with *Ortiz*. The two decisions – one getting granular with respect to "a particularly difficult interpretative issue" that it resolved based on pragmatic details, *id*. at 1159, another relying on a worker's actions being an amorphous "vital component" to a plane's ability to fly – do not square in their analyses and outcomes. The Opinion thus puts district courts in the difficult position of trying to follow two controlling opinions articulating different principles and contrasting practical-versus-nebulous approaches. The need for uniformity that district courts can practically apply to different fact patterns calls out for en banc review.

In counsel's judgment, *Ortiz* carefully analyzes *Saxon* and follows its meaning through repeated signaling of the importance that workers directly handle goods even if only moving them a short distance. In so doing, *Ortiz* affords a pragmatic (and therefore narrow) application of the residual clause consistent with *Circuit City* and provides practical guidance capable of consistent application over a variety of fact patterns in keeping with *Bissonnette*. *Ortiz* does not rely upon cases focused on employee geographic movements to understand how to apply *Saxon* to workers <u>whose geographical movement is not a consideration</u>. Instead, it

11

anchors its analysis and conclusions against *Saxon*'s "bottom line": movement of the goods. 95 F.4th at 1161, 1163 ("The basic fact that Saxon moved the bags across only a small distance does not change that *she moved the baggage as part of its interstate travel*," just like Ortiz, who only moved goods "a short distance" but "*he nevertheless moved them*") (emphasis supplied).

By contrast, the Opinion does not confront *Saxon*'s language detailing the need for "direct," "physical," "active" and "frequent" involvement with the movement of goods. Its analysis depends on language from *Rittman* relating to inapposite geographic movement to find fuelers' work a "vital component" of an aircraft's movement. It effectively concedes that this analysis offers no roadmap to district courts to apply such an approach. The Opinion also offers no meaningful consideration of *Ortiz*'s analysis or discussion of how the two outcomes can work in tandem, let alone how district courts can apply both cases consistently.

*Ortiz* and the Opinion thus create a lack of uniformity in the Circuit's decisions. Menzies submits that *Ortiz*, grounded in analysis emphasizing the same direct, physical relationship with the goods key to *Saxon*, is the better authority for how the Supreme Court directs courts through *Circuit City*, *Saxon* and *Bissonnette* to apply the transportation worker exception. Even if this Circuit ultimately were to find otherwise, at minimum the Opinion – which gives no meaningful attention this Circuit's first application of *Saxon* to workers whose geographic movements

<u>are not relevant</u> – creates inconsistency if not outright conflict.  It is imperative that the full Court rehear this matter to secure uniformity on a question certain to continue generating litigation.

### II.    **This Case Involves An Issue Of Exceptional Importance Because No Court Has Ever Before Applied The "Narrow" § 1 Exemption To Workers Who Do Not Directly Move Interstate Goods**

It is equally critical that the full Court rehear this matter because the first-of-its-kind result reached by the District Court, upheld by the panel, opens the door for expansion of the §1 exemption arguably, if not clearly, at odds with *Saxon*'s language requiring workers have "direct," "active," "frequent," and most importantly "physical" involvement in the movement of goods.  The fact that two panels of this Court have reached inconsistent results on something the Supreme Court has taken up twice in a handful of years underscores the exceptional importance of this issue.  The First Circuit has also spotlighted the importance of workers moving goods as key to the analysis by being the first to analyze the "frequent" aspect of *Saxon*'s language, and in so doing, it reiterates the importance of workers' movement of goods and shows that other courts understand *Saxon* through that practical lens.  *See Fraga*, 61 F.4th at 236-37 (remanding for factual determination as to how frequently merchandisers "sort[], load[], and transport []" the goods), *and Fraga*, 2023 WL 8435180, at *5 (exemption does not apply because retainers were not handling the interstate goods "anywhere near the

frequency of the plaintiffs in" *Saxon*). *Ortiz* also notes that federal circuits have divided on the importance or non-importance of workers' intrastate-only work. *See* 95 F.4th at 1161, *citing Lopez v. Cintas Corp.*, 47 F.4th 428 (5th Cir. 2022) *and Hamrick v. Partsfleet, LLC*, 1 F.4th 1337 (11th Cir. 2021).

This recent history suggests federal courts will continue to see litigation over the contours of the transportation worker exception, the volume of which this Circuit can abate as called for by *Bissonnette* through pragmatic interpretation. It is a virtual certainty that future courts will look to both *Ortiz* and the Opinion for guidance on how to apply the transportation worker exemption to different classes of workers. En banc review will afford the full Court <u>the first opportunity of any federal circuit to clarify *Saxon* against two counter-intuitive outcomes and provide consistent guidelines binding in this Circuit and persuasive to others</u> by following *Ortiz*'s emphasis on the worker's movement of goods. Should the Court decline this opportunity, lower courts and sister circuits will continue to struggle with analytical problems inherent in subjective standards such as "so closely related" and "a vital component" untethered to actual movement of the goods. Rehearing en banc is thus critical to address this important issue, and while Menzies urges this Circuit to follow *Ortiz*, at a minimum if this Circuit finds the Opinion a proper application of *Saxon* consistent with *Ortiz*, it should identify and explain that uniformity for the benefit of courts and future litigants.

14

### III. The Opinion Conflicts With Supreme Court And This Circuit's Authority And Substantially Affects A Rule Of National Application In Need Of National Uniformity

The Opinion endorses a first-ever application of the residual clause exemption to a class of workers who never move goods (or at a minimum never supervise such workers[4]). On a national rule of law then, the Opinion seemingly does not follow Supreme Court authority, decisions of other circuits like *Fraga*, or even decisions of this Circuit. Equally troubling, the Opinion is the first decision on this national rule bereft of objectively discernible facts driving the legal analysis. Instead, it turns to subjective judgments with the alternatively and equally nebulous assertions that fueling aircraft is "so closely related"[5] to interstate transportation and is a "vital component" to an aircraft's ability to move goods.

How far do these terms extend and how will courts promote national consistency with such subjectivity? The likelihood is that, absent a practical tether to analyze the transportation worker exception's requirement of direct involvement

---

[4] The conclusions reached by the Third Circuit in *Palcko v. Airborne Express, Inc.*, 372 F.3d 588 (3rd Cir. 2004) and the Southern District of New York in *Gabay v. Roadway Movers, Inc.*, No. 22-CV-06901 (JLR), 2023 WL 3144310 (S.D.N.Y Apr. 28, 2023) may be open to question after *Saxon*. At minimum however, the workers in both cases directly supervised workers who did move goods, creating far more "direct" involvement in the movement of goods in interstate commerce than workers like fuelers who have no direct relationship with the goods.

[5] As Menzies pointed out to the panel, the "so closely related" language courts have invoked has always related to an analysis of the workers' geographical (interstate versus intrastate) movements, but never with respect to the workers moving the goods or not moving them. The District Court and the panel are the only examples of courts ever relying on that language to find workers need not have a direct relationship with the goods nor physically move them.

15

in movement of the goods, the door swings open for use of "so closely related" and "vital component" language to avoid workers' relationship to the goods. If fueling, as a "vital component" of an aircraft's ability to fly, is sufficient to bring workers into the "narrow" transportation worker exemption, how far do courts allow the underlying logic of that analysis to extend? Does it now mean that:

- Aircraft, truck and other types of mechanics who never touch goods or cargo are transportation workers? The district court decisions in *Holley-Gallegly v. TA Operating, LLC*, No. 22-EDCV-593 JBG, 2022 WL 9959778 (C.D. Cal. Sept. 16, 2022), *vacated and remanded on other grounds*, No. 22-55950, 74 F.4th 997 (9th Cir. 2023), and *Whitaker v. Enbridge (U.S.), Inc.*, 644 F. Supp. 3d 355 (S.D. Tex. 2022), finding mechanics and equipment inspectors not to be transportation workers, suggest otherwise. But maintaining interstate vehicles, including putting oil and other fluids into them, is certainly no less a "vital component" of the vehicles' ability to transport cargo than fueling an aircraft.

- Air traffic controllers are transportation workers? Logic suggests they have no "direct" relationship to the movement of goods, but controlling the movement of aircraft and keeping aircraft, pilots and

16

passengers safe is as surely a "vital component" of the interstate transportation system as any other task.

- Engineers and assembly line workers at Boeing and Airbus are transportation workers? If they do not design and supply equipment, interstate aircraft are not even available. Such workers are as much a "vital component" of the transportation process as those who physically move the goods under this subjective thinking.

If this Court permits workers' relationship to the movement of the goods to depend on "so closely related" and "vital component" premises, how a court in New Jersey or Nebraska "logically" applies this subjective standard will almost certainly differ from how another court in California or Connecticut "logically" applies it.

On this national issue then, there is need for an objective factual tether that courts across the country can understand and apply without resorting to subjective judgments as to what is and is not a "vital component" of enabling an interstate vehicle to move. Until this case, both before and after *Saxon*, courts recognized that common anchor through physical movement of the goods or at least supervision of such physical movement. Future courts need standards they can apply in this arena consistently and uniformly. The Opinion offers the opposite, begging the questions of "how far does 'so closely related' go and what qualifies as a 'vital component' of an interstate vehicle's ability to make its journey?"

Menzies thus implores this Circuit to rehear this matter en banc so it can address the Opinion and *Ortiz* against Supreme Court authority, how other courts have consistently applied that authority, and promote consistency across the federal courts on this important national issue.

## **CONCLUSION**

For all the reasons advanced herein, the Circuit should grant Menzies' petition for rehearing en banc.

Date:  August 1, 2024                    FOLEY & LARDNER LLP

                                                        */s/ Christopher Ward*
                                                        Christopher Ward
                                                        Kevin Jackson

                                                        *Attorneys for Appellants Aircraft Service*
                                                        *International, Inc. and Menzies Aviation*
                                                        *(USA), Inc.*

18

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

## Form 11. Certificate of Compliance for Petitions for Rehearing/Responses

**9th Cir. Case Number: 23-55015**

I am the attorney or self-represented party.

I certify that pursuant to Circuit Rule 35-4 or 40-1, the attached petition for panel rehearing/petition for rehearing en banc/ is (select one):

[x]  Prepared in a format, typeface, and type style that complies with Fed. R. App. P. 32(a)(4)-(6) and contains the following number of words: 4,184. (Petitions and responses must not exceed 4,200 words)

OR

[ ]    In compliance with Fed. R. App. P. 32(a)(4)-(6) and does not exceed 15 pages.

**Signature** /s/ Christopher Ward          **Date** August 1, 2024

1

4887-1297-1141.6

## <u>CERTIFICATE OF SERVICE</u>

**9th Cir. Case Number: 23-55015**

I hereby certify that I electronically filed the foregoing/attached document(s) on this date with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit using the Appellate Electronic Filing system. Service on Case Participants Who Are Registered for Electronic Filing:

Matthew Warren Gordon
Matthew J. Matern
Max Neal Sloves
Matern Law Group, PC
1230 Rosecrans Ave., Suite 200
Manhattan Beach, CA 90266

***Attorneys for Plaintiff-Appellee, Danny Lopez***

Tel: (310) 531-1900
E-mail: *mgordon@maternlawgroup.com*
E-mail: *mmatern@maternlawgroup.com*
E-mail: *msloves@maternlawgroup.com*

Description of Document(s) (required for all documents):

**Petition for Rehearing En Banc**

**Signature** /s/ Christopher Ward _____         **Date:**  August 1, 2024

2