**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT

| | |
|---|---|
| DANNY LOPEZ, individually, and on behalf of all other aggrieved employees, | No. 23-55015 |
| | D.C. No. 2:21-cv-07108-DMG-E |
| *Plaintiff-Appellee*, | |
| v. | |
| AIRCRAFT SERVICE INTERNATIONAL, INC., a corporation; MENZIES AVIATION (USA), INC., a corporation, | OPINION |
| *Defendants-Appellants*. | |

Appeal from the United States District Court
for the Central District of California
Dolly M. Gee, Chief District Judge, Presiding

Argued and Submitted January 8, 2024
Pasadena, California

Filed July 19, 2024

Before: Johnnie B. Rawlinson, Michael J. Melloy,[*] and
Holly A. Thomas, Circuit Judges.

---

[*] The Honorable Michael J. Melloy, United States Circuit Judge for the U.S. Court of Appeals for the Eighth Circuit, sitting by designation.

Opinion by Judge Rawlinson

### SUMMARY[**]

**Arbitration**

The panel affirmed the district court's denial of defendants' motion to compel arbitration in a wage-and-hour action brought under California law by Danny Lopez, an airline fuel technician.

The panel affirmed the district court's holding that, as a transportation worker engaged in foreign or interstate commerce, Lopez was exempt under 9 U.S.C. § 1 from the arbitration requirements imposed by the Federal Arbitration Act. Under *Southwest Airlines Co. v. Saxon*, 596 U.S. 450 (2022), any class of workers directly involved in transporting goods across state or international borders falls within the transportation worker exemption. The panel concluded that a fuel technician who places fuel in a plane used for foreign and interstate commerce is a transportation worker engaged in commerce because such a worker plays a direct and necessary role in the free flow of goods across borders. The panel held that to fall within the exemption, there is no requirement that the worker have hands-on contact with goods and cargo or be directly involved in the transportation of the goods.

---

[**] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

## COUNSEL

Michael Rubin (argued), Altshuler Berzon LLP, San Francisco, California; Matthew W. Gordon, Matthew J. Matern, Max N. Sloves, Matern Law Group PC, Manhattan Beach, California; Kiran Prasad, Matern Law Group PC, Oakland, California; for Plaintiff-Appellee.

Christopher Ward (argued), Foley & Lardner LLP, Chicago, Illinois; Kevin Jackson, Foley & Lardner LLP, San Diego, California; for Defendants-Appellants.

Shay Dvoretzky and Kyser Blakely, Skadden Arps Slate Meagher & Flom LLP, Washington, D.C.; Patricia N. Vercelli and Riva Parker, Airlines for America, Washington D.C.; for Amicus Curiae Airlines for America.

## OPINION

RAWLINSON, Circuit Judge:

Aircraft Service International, Inc. and Menzies Aviation (USA), Inc. (collectively, Menzies) appeal the district court's denial of their motion to compel arbitration in an action brought by Danny Lopez (Lopez), an airline fuel technician employed by Menzies, alleging that Menzies violated California's wage, meal period, and rest period requirements. Menzies contends that the district court erred in holding that, as a transportation worker engaged in foreign or interstate commerce, Lopez was exempt from the arbitration requirements imposed by the Federal Arbitration Act (FAA). Menzies asserts that Lopez's fueling of airplanes that carried goods in interstate and foreign commerce was insufficient to support an exemption under

the FAA.  We have jurisdiction pursuant to 9 U.S.C. § 16, and we affirm the district court's denial of Menzies's motion to compel arbitration.

## I. BACKGROUND

Lopez filed a complaint in California Superior Court "on behalf of himself and all other aggrieved employees" of Menzies.  Lopez alleged that Menzies failed to provide the meal periods, rest periods, overtime wages, minimum wages, copies of records, wages earned during employment, and itemized wage statements required by California law.

Menzies removed the action to federal court, and filed a motion to compel arbitration.  Menzies maintained that arbitration of Lopez's claims was mandated by the arbitration agreement signed "[i]n connection with his employment."  Lopez opposed the motion to compel arbitration.

In addition to challenging the enforceability of the arbitration agreement, Lopez asserted that he belonged to a class of transportation workers engaged in foreign or interstate commerce that are exempt from the provisions of the FAA requiring arbitration.  In a declaration, Lopez explained that he was employed by Menzies as a field technician "in the fueling department at Los Angeles International Airport," and that he "physically added fuel to both passenger and cargo airplanes involved in both foreign and domestic interstate travel."

The district court denied Menzies' motion to compel arbitration.  The district court observed that Menzies did "not contest Lopez's description of his work, or offer additional evidence about the nature of that work."  Rather, Menzies argued that Lopez is not exempt from arbitration because he

"does not handle *goods* in commerce." The district court disagreed. Contrasting Lopez with a truck mechanic whom another district court had found ineligible for the transportation worker exemption, the district court reasoned that:

> [a]lthough an employee who adds fuel to cargo planes is not literally moving goods (as the plaintiffs in *Saxon*[1] and *Rittmann*[2] did), he is closer both physically and temporally to the actual movement of goods between states than a truck mechanic who works on trucks that move goods in interstate commerce.

Relying on the Fifth Circuit's decision in *Wirtz v. B. B. Saxon Co.*, 365 F.2d 457 (5th Cir. 1966), the district court held that, because

> the act of fueling cargo planes that carry goods in interstate commerce is so closely related to interstate transportation as to be practically a part of it . . ., Lopez, whose duties included physically adding fuel to planes, was directly involved in the transportation itself, not only the maintenance of the means by which goods were transported.

As a result, the district court "conclude[d] that Lopez is exempt from the [arbitration] requirements of the FAA."

---

[1] *Southwest Airlines Co. v. Saxon*, 596 U.S. 450 (2022).

[2] *Rittman v. Amazon.com, Inc.*, 971 F.3d 904, 907 (9th Cir. 2020).

Menzies filed a timely notice of appeal.

## II. STANDARDS OF REVIEW

"We review a denial of a motion to compel arbitration de novo and findings of fact underlying the district court's decision for clear error." *Bielski v. Coinbase, Inc.*, 87 F.4th 1003, 1008 (9th Cir. 2023) (citation, alteration, and internal quotation marks omitted).

## III. DISCUSSION

### The District Court's Denial of Menzies' Motion To Compel Arbitration

The FAA does not "apply to contracts of employment of seamen, railroad employees, or any other class of workers engaged in foreign or interstate commerce." 9 U.S.C. § 1; *see also Rittmann*, 971 F.3d at 909. Menzies maintains that, under *Saxon*, Lopez did not belong to a class of transportation workers engaged in foreign or interstate commerce because he did not have any hands-on contact with goods and direct participation in their interstate movement.

In *Circuit City Stores, Inc. v. Adams*, 532 U.S. 105, 109 (2001), the Supreme Court concluded that the FAA exemption was confined to transportation workers. The Supreme Court opined that the exemption's residual clause encompassing "any other class of workers engaged in [interstate] commerce . . . should be read to give effect to the terms 'seamen' and 'railroad employees,' and should itself be controlled and defined by reference to the enumerated categories of workers which are recited just before it." *Id.* at

114-15 (alteration omitted).[3] The Supreme Court emphasized that the statutory phrase "engaged in commerce . . . means engaged in the flow of interstate commerce, and was not intended to reach all corporations engaged in activities subject to the federal commerce power." *Id.* at 117 (citations and internal quotation marks omitted). The Supreme Court also observed that it was "reasonable to assume that Congress excluded 'seamen' and 'railroad employees' from the FAA for the simple reason that it did not wish to unsettle established or developing statutory dispute resolution schemes covering specific workers." *Id.* at 121.

*Saxon*, decided over twenty years after *Circuit City*, involved a ramp supervisor who was "frequently require[d] . . . to load and unload baggage, airmail, and commercial cargo on and off airplanes that travel across the country." 596 U.S. at 453. In *Saxon*, the Supreme Court further clarified the exemption for transportation workers, explaining that as used in the FAA, "[t]he word 'workers' directs the interpreter's attention to 'the *performance* of work,'" and "the word 'engaged'—meaning occupied, employed, or involved—similarly emphasizes the actual work that the members of the class, as a whole, typically

---

[3] The Supreme Court explained that "the words 'any other class of workers engaged in commerce' constitute a residual phrase, following, in the same sentence, explicit reference to 'seamen' and 'railroad employees.'" *Circuit City*, 532 U.S. at 114 (alteration omitted). "Construing the residual phrase to exclude all employment contracts fails to give independent effect to the statute's enumeration of the specific categories of workers which precedes it; there would be no need for Congress to use the phrases 'seamen' and 'railroad employees' if those same classes of workers were subsumed within the meaning of the 'engaged in commerce' residual clause. . . ." *Id.* (alteration omitted).

carry out." *Id.* at 456 (citations, alterations, and internal quotation marks omitted) (emphasis in the original). The Supreme Court opined that "any class of workers directly involved in transporting goods across state or international borders falls within [9 U.S.C.] § 1's exemption." *Id.* at 457. The Supreme Court, therefore, thought it "plain that airline employees who physically load and unload cargo on and off planes traveling in interstate commerce are, as a practical matter, part of the interstate transportation of goods." *Id.* And the Supreme Court expounded that any worker qualifying for the exemption "must at least play a direct and necessary role in the free flow of goods across borders," and that "transportation workers must be actively engaged in transportation of those goods across borders via the channels of foreign or interstate commerce." *Id.* at 458 (citations and internal quotation marks omitted).

The Supreme Court concluded that "[c]argo loaders exhibit this central feature of a transportation worker" because "one who loads cargo on a plane bound for interstate transit is intimately involved with the commerce (e.g., transportation) of that cargo." *Id.* Distinguishing prior cases, the Supreme Court observed:

> [u]nlike those who sell asphalt for intrastate construction or those who clean up after corporate employees, our case law makes clear that airplane cargo loaders plainly do perform activities within the flow of interstate commerce when they handle goods traveling in interstate and foreign commerce,

> either to load them for air travel or to unload them when they arrive.

*Id.* at 462-63 (citation and internal quotation marks omitted).[4]

In *Rittman*, a case decided prior to *Saxon*,[5] we considered whether Amazon's AmFlex delivery drivers, employed to "make last mile deliveries of products from Amazon warehouses to the products' destinations," were transportation workers exempt from the FAA's enforcement provisions. 971 F.3d at 907 (internal quotation marks

---

[4] In *Bissonnette v. LePage Bakeries Park St., LLC*, 601 U.S. 246 (2024), a case involving plaintiffs who "worked as distributors" for a "producer and marketer of baked goods," *id.* at 248, the Supreme Court considered "whether a transportation worker must work for a company in the transportation industry to be exempt under § 1 of the FAA." *Id.* at 252 (footnote reference omitted). In holding that "[a] transportation worker need not work in the transportation industry to fall within the exemption from the FAA provided by § 1 of the Act," the Supreme Court "express[d] no opinion on any alternative grounds in favor of arbitration . . . including that petitioners are not transportation workers and that petitioners are not 'engaged in foreign or interstate commerce' within the meaning of § 1 because they deliver baked goods only in Connecticut." *Id.* at 256. Focusing on the work performed, the Supreme Court reiterated that, under the FAA, "any exempt worker must at least play a direct and necessary role in the free flow of goods across borders." *Id.* (citation and internal quotation marks omitted); *see also id.* at 255 (noting that the "classes of workers" referenced in the exemption "are connected by what they do").

[5] We have held that there is "no clear conflict between *Rittmann* and *Saxon*." *Carmona v. Domino's Pizza, LLC*, 73 F.4th 1135, 1137 (9th Cir. 2023).

omitted). We noted that, when enacted, the FAA defined "commerce" as:

> Intercourse by way of trade and traffic between different people or states and the citizens or inhabitants thereof, including not only the purchase, sale, and exchange of commodities, but also the instrumentalities and agencies by which it is promoted and the means and appliances by which it is carried on, and the transportation of persons as well as of goods, both by land and by sea.

*Id.* at 910 (citation omitted). We concluded that a worker was engaged in interstate and foreign commerce when "her work was so closely related to interstate and foreign commerce as to be in practical effect part of it." *Id.* at 911 (citation, alteration, footnote reference, and internal quotation marks omitted).

Relying on cases addressing employment in interstate commerce for purposes of the Federal Employees Liability Act (FELA), we observed that,

> [p]rior to the FAA's enactment in 1925, the Supreme Court articulated that the true test of such employment in such commerce in the sense intended is, was the employee, at the time of the injury, engaged in interstate transportation, or in work so closely related to it as to be practically a part of it?

*Id.* at 912 (citation, alterations, and internal quotation marks omitted). "In incorporating almost exactly the same phraseology into the Arbitration Act of 1925 its draftsmen

and the Congress which enacted it must have had in mind this current construction of the language which they used." *Id.* at 913 (citation omitted).

We further observed that "the Supreme Court has held that the actual crossing of state lines is not necessary to be engaged in commerce for purposes of the Clayton and Robinson-Patman Acts." *Id.* (internal quotation marks omitted).

> In a pair of cases decided in the same term, the Court clarified that Congress's use of the term 'engaged in commerce' was a limited assertion of its jurisdiction, and denoted only persons or activities within the flow of interstate commerce—the practical, economic continuity in the generation of goods and services for interstate markets and their transport and distribution to the consumer. . . ." *Id.* (citation, alteration, and some internal quotation marks omitted). Based on analogous language in other statutes, we emphasized that "a class of workers must themselves be engaged *in the channels* of foreign or interstate commerce."

*Id.* at 916-17 (citation, footnote reference, and internal quotation marks omitted) (emphasis in the original).

After considering the meaning of "engaged in commerce" in other statutes, the nature of Amazon's business, and the involvement of intrastate delivery drivers in the channels of interstate commerce, we determined that Amazon's AmFlex workers were exempt from the FAA. We explained that "Amazon hires AmFlex workers to complete

the delivery. AmFlex workers form a part of the channels of interstate commerce, and are thus engaged in interstate commerce as we understand that term." *Id.* at 917 (footnote reference omitted). As a result, "AmFlex delivery providers [fell] within the exemption, even if they [did] not cross state lines to make their deliveries." *Id.* at 919.

Following the analytical approach applied in *Rittmann*, we conclude that a fuel technician who places fuel in a plane used for foreign and interstate commerce is a transportation worker engaged in commerce because a fuel technician "play[s] a direct and necessary role in the free flow of goods across borders." *Saxon*, 596 U.S. at 458 (citation and internal quotation marks omitted). Lopez's fueling of the plane—a vital component of its ability to engage in the interstate and foreign transportation of goods—is "so closely related to interstate and foreign commerce as to be in practical effect part of it." *Rittmann*, 971 F.3d at 911 (citation and alteration omitted). Thus, Lopez was engaged "in the *channels* of foreign or interstate commerce" for purposes of the FAA exemption. *Id.* at 916-17 (citation, footnote reference, and internal quotation marks omitted) (emphasis in the original); *see also Ortiz v. Randstad Inhouse Servs., LLC*, 95 F.4th 1152, 1161-62 (9th Cir. 2024) (concluding that workers whose "job duties included exclusively warehouse work" were transportation workers because they "fulfilled an admittedly small but nevertheless

direct and necessary role in the interstate commerce of goods") (internal quotation marks omitted).[6]

The Supreme Court did not impose a requirement in *Saxon* that the worker must have hands-on contact with goods and cargo or be directly involved in the transportation of the goods. Instead, the Supreme Court recognized that workers may be exempt from the FAA even "when the class of workers carries out duties further removed from the channels of interstate commerce or the actual crossing of borders." 596 U.S. at 457 n.2.[7] The Supreme Court declined to address situations beyond the facts involved in *Saxon*, and did not otherwise mandate that a worker must have hands-

---

[6] Amicus Airlines For America asserts that the district court's decision "creat[ed] significant line-drawing problems and undermine[d] the FAA's proarbitration purpose." However:

> line-drawing is a product of *Circuit City* itself. In concluding that the residual clause does not encompass all employment contracts, but only those of transportation workers, the Court left it to the lower courts to assess which workers fall within that category. Doing so unavoidably requires the line-drawing that courts often do.

*Rittmann*, 971 F.3d at 918 (citation and internal quotation marks omitted). "If that line-drawing proves to be unmanageable, it is up to Congress, not jurists, to revise the statute. Congress did so with FELA, and we have no reason to believe it cannot do so here. . . ." *Id.* (citation and footnote reference omitted). Additionally, "[n]othing in *Circuit City* requires that we rely on the pro-arbitration purpose reflected in [9 U.S.C.] § 2 to even *further* limit the already narrow definition of the phrase 'engaged in commerce.'" *Id.* at 914 (emphasis in the original).

[7] Notably, the Supreme Court cited, without criticizing, our decision in *Rittman* as exemplifying "a class of workers" whose duties were "further removed from the channels of interstate commerce or the actual crossing of borders." *Saxon*, 596 U.S. at 457 n.2.

on involvement with the goods themselves to qualify as a transportation worker involved in interstate commerce. *See id.*

Menzies and Amicus also fault the district court for relying on non-FAA cases addressing FELA and the Fair Labor Standards Act (FLSA). However, in *Rittmann*, we relied on FELA cases, as well as Supreme Court cases discussing the Clayton and Robinson-Patman Acts, to resolve the FAA exemption issue. *See* 971 F.3d at 912-13 & n.2. In doing so, we emphasized that there has been a "longstanding reliance on [FELA] to interpret the FAA's text, dating back to the 1950s." *Id.* at 918 n.9 (citations omitted). The First Circuit, for example, referenced FELA to interpret the FAA's interstate commerce exemption, observing,

> In numerous cases, the Supreme Court considered when a railroad employee was engaged in interstate commerce, such that the FELA provided coverage for injuries sustained on the job. Whether a worker had moved across state lines was not dispositive. Rather, the Court concluded that workers engaged in interstate commerce did not refer only to those workers who themselves carried goods across state lines, but also included at least two other categories of people: (1) those who transported goods or passengers that were moving interstate, and (2) those who were not involved in transport themselves but were in positions so closely related to

> interstate transportation as to be practically a part of it.

*Waithaka v. Amazon.com, Inc.*, 966 F.3d 10, 19-20 (1st Cir. 2020) (citations and internal quotation marks omitted). The First Circuit also noted that the Supreme Court has referenced the federal arson statute, the Clayton Act, the Robinson-Patman Act, and the Federal Trade Commission Act in interpreting sections 1 and 2 of the FAA. *See id.* at 16-17.

Under the analytical framework used in Supreme Court cases and in our precedent interpreting similar statutes, there is historical support for the district court's determination that fuel technicians are transportation workers engaged in commerce. In *Wirtz*, for example, the Fifth Circuit held that, under the FLSA, "[t]here can be no question that the employees who hauled airplane fuel to the planes were engaged in commerce within the statute and the applicable judicial precedents." 365 F.2d at 460-61 (citation omitted). And in *Shanks v. Delaware, Lackwanna, & W. Railroad Co.*, 239 U.S. 556 (1916), the Supreme Court similarly recognized that, under FELA, "the requisite employment in interstate commerce exists . . . where a fireman is walking ahead of and piloting through several switches a locomotive which is to be attached to an interstate train and to assist in moving the same up a grade." *Id.* at 558-59 (citation omitted); *see also North Carolina R.R. Co. v. Zachary*, 232 U.S. 248, 259-60 (1914) (holding that a fireman's "acts in inspecting, oiling, firing, and preparing his engine for [a] trip . . . were acts performed as a part of interstate commerce and the circumstance that the interstate freight cars had not as yet been coupled up [was] legally insignificant"). Although these cases are not dispositive in determining if fuel

technicians are transportation workers engaged in commerce, their reasoning militates against Menzies's contentions that a transportation worker is limited to those employees who have hands-on contact with goods and direct involvement with the transportation of the goods.

Contrary to Menzies's argument, the district court faithfully applied *Saxon's* analytical framework, our precedent as set forth in *Rittmann*, and the guidance from cases involving similar statutory language. We agree with the district court that Lopez, as a transportation worker engaged in intestate or foreign commerce, was exempt from the arbitration requirements imposed by the FAA. *See Rittmann*, 971 F.3d at 919.

## IV.  CONCLUSION

In *Saxon*, the Supreme Court did not hold that only workers who had hands-on contact with goods bound for transportation in interstate or foreign commerce qualify for the FAA exemption for transportation workers. Instead, the Supreme Court opined that "the answer will not always be . . . plain when the class of workers carries out duties further removed from the channels of interstate commerce or the actual crossing of borders." *Saxon*, 596 U.S. at 457 n.2. Applying *Saxon* and our precedent as set forth in *Rittmann*, we conclude that Lopez, working as a technician fueling planes carrying goods in interstate and foreign commerce, qualifies as a transportation worker for purposes of the exemption from the FAA's arbitration requirements.

**AFFIRMED.**